UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

---

MICHAEL JOSEPH ROTONDO,

                Plaintiff,

- against -               **AFFIDAVIT IN SUPPORT OF**

                                      **SUMMARY JUDGMENT**

                                      **Civil Case No. 5:17-CV-522**

                                      **DNH/DEP**

BEST BUY STORES, LLC,

                Defendant.

---

       The Plaintiff Michael J. Rotondo asserts under the penalties of perjury as

follows:

### STATEMENT OF MATERIAL FACTS

1.     The Plaintiff filed a letter with the court on November 1, 2017, describing

why he felt the need to file motions that both compel discovery and dispose of

this case; which those motions that both compel discovery and dispose of this

case had also filed along with this same letter. In this same letter, the Plaintiff

describes how the Defendant was unwilling to develop a case management plan

with the Plaintiff, prior to the Rule 16 conference and, the Defendant was

unwilling to discuss the Plaintiff's case with him in any way and, that these were the reasons why the Plaintiff believed that he had to file motions with the court as, the Defendant was unwilling to participate in the case in any way. These facts are depicted in this same letter to the court, entitled "Explanation for filing discovery", itself annexed hereto as "Exhibit A".

2.      Defendant serves onto Plaintiff their own "First set of interrogatories and request for production of documents", dated November 1, 2017. Plaintiff claims that this same service occurred only after he had filed his November 1, 2017, Docket entries 25-36; which were his letter "Explanation for filing discovery", motions to compel discovery, and a dispositive motion. This same Defendant's own "First set of interrogatories and request for production of documents" is annexed hereto as "Exhibit B".

3.      The court ruled that the Plaintiff's motions to compel discovery (Docket numbers 27-36) were filed prematurely.

4.      Defendant's "First set of interrogatories and request for production of documents" (Exhibit B) did not speak to the operative pleading, this can be seen by reading interrogatory "5" from "Exhibit B" and then reading paragraph 8(b)

of the operative pleading. This same error is described very clearly to the Defendant in a letter from the Plaintiff to the Defendant entitled "Response to interrogatories and request for production of documents", which is itself dated November 5, 2017. This same "Response to interrogatories and request for production of documents" of the Plaintiff's, is annexed hereto as "Exhibit C".

5.     Plaintiff served onto the Defendant his own "Plaintiff's request for discovery and admissions". This same "Plaintiff's request for discovery and admissions" is annexed hereto as "Exhibit D". This "Exhibit D", describes the discovery motions, which were filed with the court on November 1, 2017, and, those motions were attached to this "Plaintiff's request for discovery and admissions" upon service onto the Defendant. These same discovery motions filed on November 1, 2017 are not attached to this "Exhibit D" because they consist of too many pages to attach to this motion, so they are provided by reference to the case docket, numbers 27-35.

6.     Defendant responds to Plaintiff's "Response to interrogatories and request for production of documents" (Exhibit C), with a letter dated November 16, 2017, in which it is asserted by the Defendant that it is the consideration of the Plaintiff, that the numbers of the interrogatories need to correspond in subject

matter to the numbers in the complaint, and that this is an error on behalf of the

Plaintiff; This was an egregious misinterpretation of Plaintiff's "Response to

interrogatories and request for production of documents" (Exhibit C).

Defendant's same letter dated November 16, 2017, is annexed hereto as

"Exhibit E".


7.   Plaintiff responds to Defendant's letter dated November 16, 2017 (Exhibit

E) with Plaintiff's "2nd response to interrogatories and request for production

of documents", itself dated November 18, 2017, in which the Plaintiff spells out

for the Defendant, how they may see the error in their "First set of

interrogatories and request for production of documents" (Exhibit B). This same

"2nd response to interrogatories and request for production of documents" of

the Plaintiff's goes ignored by the Defendant. This same "2nd response to

interrogatories and request for production of documents" of the Plaintiff's is

annexed hereto as "Exhibit F".


8.   The Defendant Responds to "Plaintiff's request for discovery and

admissions" (Exhibit D), with their December 6, 2017 "Response to request for

discovery and admissions" in which, the Defendant denies that they have to

respond to the concatenated documents, because those same concatenated

documents were denied by the court as premature, while those same

concatenated documents were motions. Plaintiff claims that Defendant's claim

that Defendant doesn't have to respond to those same concatenated documents

is unreasonable. Defendant's same December 6, 2017 "Response to request for

discovery and admissions" is annexed hereto as "Exhibit G".

9.      After 30 days had passed since the Plaintiff had served his own "2nd

response to interrogatories and request for production of documents" (Exhibit

F), the Plaintiff had filed a dispositive motion (Docket number 45), based on

Defendant's failure to defend as, the Defendant would not discuss the case with

the Plaintiff prior to the Rule 16 conference and then subsequently refused to

amend their own "First set of interrogatories and request for production of

documents", (Exhibit B) to reflect the (or any) operative pleading in spite of the

numerous and crystal clear requests by the Plaintiff, for the Defendant to do so.

10.     The Plaintiff had served onto Defendant, notices to take the depositions of

both Joshua Louie and "Mary" and also, served onto the Defendant "Plaintiff's

request for documents, interrogatories, and admissions", all onto the Defendant

on April 23, 2018. This same notice to take deposition of Joshua Louie is

annexed hereto as "Exhibit H", and this same notice to take deposition of Mary

is annexed hereto as "Exhibit I", and this same "Plaintiff's request for

documents, interrogatories, and admissions" is annexed hereto as "Exhibit J".

11.    Defendant did not respond to either of Plaintiff's notices, to take the

depositions of Joshua Louie or "Mary".


12.    At the Plaintiff's own deposition on May 7, 2018, the Plaintiff asked the

Defendant if he intended to produce Joshua Louie and "Mary" for the

depositions that Defendant himself was served notice for (Exhibits "H" and

"I"). The Defendant said that he himself was not available on May 10, 2018 to

do those same depositions.


13.    Defendant appeared at the May 10, 2018 deposition of Christopher

Richardson.


14.    During the May 10, 2018 telephone conference, the Defendant had

disclosed that "Mary", who had been identified as Mary Davis, was no longer

an employee of the Defendant. In response to this, the Plaintiff then represented

to the Defendant during this same telephone conference, that he himself wished

to depose Samantha Precourt instead of Mary Davis.

15.     On May 15, 2018 at 10:44 AM, the Plaintiff received from the Defendant a "Letter to Rotondo re depositions.pdf" via email. In this same letter, the Defendant stated that Mary Davis and Samantha Precourt are not employees of the Defendant. This same "Letter to Rotondo re depositions.pdf" is annexed hereto as "Exhibit K".

16.     On May 15, 2018 at 1:04 PM, the Plaintiff asked the Defendant to "Please return to me the checks for Mary, and Mariah Goddard." vi email. This same email is annexed hereto as "Exhibit L".

17.     On May 15, 2018 at 2:24 PM, the Plaintiff asked through email, if the Defendant will respond to the Plaintiff's request for the checks of Mary and Mariah Goddard; through the reference of his previous request of the Defendant (Exhibit L) for those same checks. The response from the Defendant was that these checks will be mailed back to him (the Plaintiff). This same response is annexed hereto as "Exhibit M".

18.     On May 16, 2018 at 11:26 AM, the Plaintiff had attempted to schedule the deposition of "Mary's" replacement, who was herself Samantha Precourt, after the date for the deadline for discovery had passed. The Plaintiff did this

because, the Plaintiff needed enough time to serve a Rule 45 subpoena onto Samantha Precourt. With the challenge that the Defendant had turned the deposition of "Mary" into, by not responding to the Plaintiff's notice to take deposition of her, the Plaintiff did not have enough time to serve a Rule 45 subpoena onto Samantha Precourt, unless the deposition date was after the deadline for discovery. The Defendant was unwilling to schedule the Rule 45 depositions of Samantha Precourt past the discovery deadline, which prevented her testimony from being procured for this case. The correspondence in which the Defendant had refused to make himself available for a deposition scheduled after the discovery deadline, is annexed hereto as "Exhibit M".

19.    On May 21, 2018 at 1:14 PM, the Plaintiff sent a letter to the Defendant via email, stating that he wishes to depose Joshua Louie and, describes the manner in which the Defendant has made this same deposition of Joshua Louie difficult for himself. This same letter sent via email is annexed hereto as "Exhibit N".

20.    On May 21, 2018 at 3:25 PM, the Plaintiff received the Defendant's response to his "Plaintiff's request for documents, interrogatories, and admissions". Within this same response of the Defendant's, Joshua Louie is

characterized as a "nonparty". This same response by the Defendant is annexed
hereto as "Exhibit O".

21.   On May 21, 2018 at 3:26 PM, the Plaintiff received an email from the
Defendant stating that Joshua Louie isn't an employee of the Defendant. This
same email is annexed hereto as "Exhibit P".

22.   The Plaintiff claims that the Defendant had set fourth that Joshua Louie
was an employee of the Defendant by not disclosing to the Plaintiff that, Joshua
Louie was not an employee of the Defendant while, simultaneously having
disclosed that other individuals named as employees in the same instance(s) as
Joshua Louie, were disclosed as not being employees of the Defendant. The
Plaintiff further claims that the Defendant had prevented the testimony of
Joshua Louie from being procured through the withholding of the fact that
Joshua Louie was not an employee of the Defendant and also, the unwillingness
of the Defendant to schedule depositions past the discovery deadline each and
both.

23.   Plaintiff was harassed with his parenting time with his son, by being
scheduled unnecessarily on days that the Defendant knew that the Plaintiff had

parenting time with his son. This was done to the Plaintiff by the Defendant by the Defendant scheduling the Plaintiff to come into work on effectively each and every Saturday, while the Defendant had no business need to call the Plaintiff in to work on those same Saturdays. This occurred throughout the year of 2015 and was done to the Plaintiff by both Mariah Goddard and Martin Brown each, at the Best Buy Store located at 9090 Destiny USA Dr. Syracuse, NY 13290. This claim is supported by pages 102-111 (bates stamp BBS00358-BBS00367) of Defendant's "Exhibit A to Rule 26 disclosure", it which it can be seen that the Defendant scheduled the Plaintiff to come in and work on Saturdays, from 6:00 PM to 10:00 PM. This same claim could have been supported by the testimony of Joshua Louie, and to support that it was unnecessary to schedule the Plaintiff on Saturdays, but the Defendant had fraudulently prevented this testimony from being procured by miss-characterizing the status of Joshua Louie's employment with the Defendant.

24.     The Respondent consistently perpetually and unfairly placed the Plaintiff in the "portable audio" or "networking" sections of his department, instead of placing him in the section of his department where the employees sold cellular phones. Selling cellular phones is much preferred amongst employees, over being placed elsewhere in the department, and the Plaintiff could most

effectively be capitalized on as an employee by being placed in the department

to sell cellular phones, because of his experience in the cellular phone

department. This occurred throughout the year of 2015 and was done to the

Plaintiff by both Mariah Goddard and Martin Brown each, at the Best Buy

Store located at 9090 Destiny USA Dr. Syracuse, NY 13290.  This same claim

could have been supported by the testimony of Joshua Louie, but the Defendant

had fraudulently prevented this testimony from being procured by miss-

characterizing the status of Joshua Louie's employment with the Defendant.


25.    The Respondent had agreed to allow the Plaintiff to be unavailable for

work on all Saturday's in perpetuity, including the Halloween holiday on

10/31/2015. This was agreed upon on behalf of the Defendant by the General

Manager of the Best Buy store that the Plaintiff had worked at Jason Kollbaum,

whom had agreed to this same unavailability on 9/6/2015 at 3:32 CDT. In

accordance with company policy, the Plaintiff could depend on this same

agreement. It was documented that the Plaintiff was reprimanded on a day

shortly after 10/31/2015 by Justin Hayse, for not coming in to work on

10/31/2015. This occurred at the Best Buy Store located at 9090 Destiny USA

Dr. Syracuse, NY 13290. This claim is supported by pages 22-24 (bates stamp

BBS00278-BBS00280) of Defendant's "Exhibit A to Rule 26 disclosure",

which shows that the Plaintiff had "all Saturdays off in perpetuity" and, the

documentation of this same reprimand by Justin Hayse, for the Plaintiff not

coming in to work for the Defendant on 10/31/2015. This same documentation

for the same reprimand by Justin Hayse, is annexed hereto as "Exhibit Q". This

documentation of this same reprimand could have been identified as exactly

what the Plaintiff claims it is by the testimony of Joshua Louie, but the

Defendant had fraudulently prevented this testimony from being procured, by

miss-characterizing the status of Joshua Louie's employment with the

Defendant.

26.    The Plaintiff was told by his supervisor Mariah Goddard that, if he did not

request for the Defendant to amend his work availability agreement to include

Saturdays, as a day that he was available to work, he would be terminated. This

occurred at the Best Buy Store located at 9090 Destiny USA Dr. Syracuse, NY

13290. This representation that the Plaintiff would be terminated if he did not

amend his work agreement with the Respondent was reiterated by Mariah

Goddard to the Plaintiff on 12/4/2015 at the Best Buy Store located at 9090

Destiny USA Dr. Syracuse, NY 13290. In accordance with company policy, the

Plaintiff was under no obligation to request to amend his work availability

agreement with the Respondent. The Plaintiff did not request to amend his work

availability agreement with the Respondent to thereafter include Saturdays. The Respondent terminated the employment of the Plaintiff on/about 12/4/2015.

This is claim is supported by the findings of fact by the New York State Department of Labor that, the Plaintiff's request for Saturdays off was approved by the general manager; This is stated on page three paragraph one of a letter sent from the New York State Department of Labor to the Plaintiff and, a copy of this letter is annexed hereto as "Exhibit R". Also, that same letter from the New York State Department of Labor states incorrectly the nature of that same request to have Saturdays off, as pertaining to "several Saturdays" while in fact, that same request for Saturdays off, was a request for all Saturdays off in perpetuity, and not "several Saturdays", which is supported by Defendant's own availability data of the Plaintiff (pages 22-24 of Defendant's "Exhibit A to Rule 26 disclosure; bates stamp BBS00278-BBS00280), which shows that the Plaintiff had all Saturdays off in perpetuity approved by the Defendant.

27.    Other single parents who were females, were not treated the same way that the Plaintiff was. This would have been supported by the testimony of Samantha Precourt, who was herself a single female parent, but the Defendant refused to schedule a deposition past the discovery deadline date, which prevented her testimony from being procured. This same refusal for the

Defendant to schedule a deposition past the discovery deadline date is annexed

hereto as "Exhibit M". This claim is further supported by the answers provided

by Christopher Richardson, at the Plaintiff's deposition of Mr. Richardson, In

which Mr. Richardson provides that Samantha Precourt was a single parent who

was female, who was not treated differently because she was a single female

parent. This is evident in pages 19, and 21-22 of the transcription of this same

deposition of Mr. Richardson. These same pages of the deposition of Mr.

Richardson are annexed hereto as "Exhibit S".

28.    The Plaintiff was harassed with his parenting time with his son, by being

exclusively scheduled on a day of the week that the Respondent knew would be

most burdensome to the Plaintiff's parenting time, with his own son. This

occurred between January 12, 2015 and February 12, 2015, and was done to the

Plaintiff by his supervisor Martin Brown, at the Best Buy Store located at 9090

Destiny USA Dr. Syracuse, NY 13290. This is supported by page 102 (bates

stamp BBS00358) of Defendant's "Exhibit A to Rule 26 disclosure" as,

1/17/2015, 1/24/2015, 1/31/2015, and 2/7/2015 are all Saturdays. Further, pages

89-91 (bates stamp BBS00345-BBS00347) of Defendant's "Exhibit A to Rule

26 disclosure", show that during the same days of the year (January 12 –

February 12) of one year prior, show that the business needs for the Defendant

of the Plaintiff, corresponded to 44 scheduled shifts for the Plaintiff to come in

and work for the Defendant in that time span. The business needs of the

Defendant for those same "times of year" are effectively identical, from one

year (2014) to that subsequent year (2015).


29.    The Respondent had failed to promote the Plaintiff, this was done to the

Plaintiff at the Best Buy Store located at 9090 Destiny USA Dr. Syracuse, NY

13290, some time previous to 2015.

       This claim of failure to promote is supported by page 21 (bates stamp

BBS00277) of Defendant's "Exhibit A to Rule 26 disclosure" as, it describes

that the Plaintiff was turned down because a better candidate was chosen

because of that candidate's "education" and, the testimony of Joshua Louie to

this same "education", would show that this same "education" was the

experience Joshua Louie had from developing android cellular-phone

applications, which was not a duty of a Best Buy sales associate under any

circumstances. Also, Joshua Louie had no previous experience working at Best

Buy, Joshua Louie had only worked one previous Retail job, and for a duration

of 6 months and, this same 6 month duration of employment in retail shows that

it is unlikely that Josh would have stayed with Best Buy, long enough to make

hiring him for a full time position worthwhile. At the time of Joshua Louie's

application for employment at Best Buy, the Plaintiff had been working for the

Defendant (Best Buy) for years. These claims regarding the work history and

"education" of Joshua Louie could have been supported by the testimony of

Joshua Louie, but the Defendant had fraudulently prevented this testimony from

being procured, by miss-characterizing the status of Joshua Louie's

employment with the Defendant.

30.    Jason Kollbaum, a general manager, had the authority to approve the

Plaintiff's request to have all Saturday's off in perpetuity, per company policy.

This component of company policy is described in the internal Best Buy Stores

LLC. document entitled "Availability Standards", which itself states on the

fourth "bullet" from the top that:

> "While we will not make exceptions to the Availability Standards,
>
> employees may request accommodations from their General
>
> Manager and DHRM. These requests will be approved or denied by
>
> these leaders."

Thereby clearly describing, that a General Manager may approve a request for

an employee to have all Saturday's off in perpetuity, and that should such an

approval transpire, this agreement could then be depended upon by the relevant

employee. A copy of the internal Best Buy Storess LLC. document entitled "Availability Standards", has been annexed hereto as "Exhibit T". This same "Exhibit T" could have been identified as exactly what the Plaintiff claims it is by the testimony of Joshua Louie, but the Defendant had fraudulently prevented this testimony from being procured, by miss-characterizing the status of Joshua Louie's employment with the Defendant.

31.    The Defendant had demonstrated that the discrimination against the Plaintiff was systemic, by the Defendant disregarding a report that the Plaintiff had made to the "Best Buy Human Resources department" which was a corporate (not store) level entity, within Best Buy Stores LLC. This is supported by pages 2-3 (bates stamp BBS00258 and BBS00259) of Defendant's "Exhibit A to Rule 26 disclosure" in which, it can be seen that the Plaintiff's supervisor had, among other things, "called the Plaintiff girls names"; and the resolution to this was that it had been worked out while in fact, the lack of resolution, is demonstrated the in the further discrimination of the Plaintiff by the Defendant, that had occurred in the years following. The "activity number 1-21V7RO" on the bottom of bates stamp BBS00259 had marked the issue as resolved, while it was in fact not resolved; Plaintiff claims the failure to resolve his "human resources complaint" was an act of discrimination against him at the corporate

level as, there was no actual resolution documented, for the same (a) significant

issue that the Plaintiff had brought to the attention of the "Best Buy Stores

Human Resources Department", that would certainly seem to the rational

reasonable person as requiring a thorough investigation and cohesive resolution.


32.    The Plaintiff's lost wages are described as follows. Back pay: Lost wages

from the failure to promote to full time, for two years time during the years of

2014-2015, calculated by doubling my income earned for those years ($12,000

per year); as being promoted to full time would have doubled my hours from

2014 to 2015.

    $24,000.

    Also, from the time that I was terminated until now, calculated by two

    years full time at $11.01/hour

    $45,955

    **Total Back-pay   $69,955**

Front pay: It cannot be reasonably considered now, that the Plaintiff can apply

and then be accepted for, a position in retail management because, the Plaintiff

did not get any experience in retail management because the Defendant had

failed to promote him and, had terminated him before he had a chance to

achieve a position in management; Because of this, the front pay is reflective of

the fact that in order for the Plaintiff to now, attempt to achieve a position in retail management, he would have to start in an 'introductory position', which would then take years for him to gain the necessary experience, and then advance into, a higher paying management position. The Plaintiff places the value of these lost wages at $22,147.

**Total Front-pay $22,147**

**Total Front-pay and Back-pay added**

**$92,102**

Less the Plaintiff's income since he had been employed by the Respondent, which is as follows:

Unemployment:$2301.00

Day-labor:   $350

Odd-jobs:  $1500

Ski-instructor:$1402.10

Computer business:  $650

**Total to subtract:        $6,203.10**

**Total lost wages, Inclusive of income since 12/4/2015**

**$85,898.90**

33.     The Defendant had discriminated against the Plaintiff because of his gender/male by reprimanding him for reasonable mistakes that were of no fault of his own. These same mistakes stemmed from the inherent complexity of his job and, were mistakes that were in no way unique to the Plaintiff himself and, were clearly moot issues to all the parties involved, including the Defendant. This is supported by the documentation of these reprimands, which are annexed hereto as all of "Exhibit U", "Exhibit V", and "Exhibit W". This documentation of these same reprimands could have been identified as exactly what the Plaintiff claims they are, through the testimony of Joshua Louie, but the Defendant had fraudulently prevented this testimony from being procured, by miss-characterizing the status of Joshua Louie's employment with the Defendant.

34.     The Defendant has not provided any defense as of yet which would cast any doubt onto the allegations of discrimination brought against the Defendant by the Plaintiff.

35.     The Plaintiff claims that the Defendant has refused to provide reasonable responses to the Plaintiff's requested admissions, interrogatories, and

production of documents; and also impeded the Plaintiff's depositions, because all of this evidence that would have been collected by the Plaintiff, would have shown that he Defendant has discriminated against the Plaintiff in such a way that is no less egregious then the way that the Plaintiff has described and characterizes this same discrimination to be.

**WHEREFORE,** the Plaintiff requests that a Judgment is entered against the Defendant, awarding the Plaintiff the amount of $388,000, together with such other and further relief as to the Court may deem just and proper.

DATED:    June _15_, 2018

MICHAEL J. ROTONDO

Plaintiff

408 Weatheridge Dr.

Camillus, NY 13031

Sworn to before me this

_15_ day of _June_, 20 _18_

MAURICE ROSS
Notary Public. State of New York
No. 01RO6276894
Qualified in Onondaga County
Commission Expires 02/25/20 21