U.S. DISTRICT COURT - N.D. OF N.Y.

FILED

JUL - 9 2018

AT_____O'CLOCK_____

Lawrence K. Baerman, Clerk - Syracuse

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

MICHAEL JOSEPH ROTONDO,

Plaintiff,

- against -

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**

**MOTION FOR SUMMARY JUDGMENT**

**Civil Case No. 5:17-CV-522**

**DNH/DEP**

BEST BUY STORES, LLC,

Defendant.

The Plaintiff Michael J. Rotondo asserts under the penalties of perjury as follows:

### AS AND FOR A RESPONSE TO THE AFFIDAVIT OF JASON KOLLBAUM

1.      Plaintiff denies the claim of Jason Kollbaum, that the Plaintiff voluntarily terminated his employment and in support of this, the Plaintiff cites his "Exhibit R" herein, in which the New York State Department of Labor found that the Plaintiff was terminated.

2.      Plaintiff claims that Defendant's own "Exhibit A" "Availability Standards", from the Affidavit of Jason Kollbaum (Docket #65-17), allows for the General Manager to approve an "exception" to these same availability standards and, that this exception would be valid per company policy.

3.      In the Affidavit of Jason Kollbaum (Docket #65-17), deponent (Jason Kollbaum) claimed in section "9" of this same document, that a conversation between himself and the Plaintiff had taken place. The Plaintiff denies that this same conversation had taken place and in support of this, Plaintiff cites a letter that the Defendant had sent to the Equal Employment Opportunity Commission, as this same conversation claimed to have taken place the is not reflected in the account of the Defendant of these matters. In the letter to the EEOC, the Defendant claimed that

Justin Hayes had spoken with the Plaintiff about his availability, not Jason Kollbaum. This same

letter to the EEOC is on record as Plaintiff's "Exhibit A" from Docket entry #36 (Plaintiff's motion

for summary judgment entered 11/1/2017.

4.      In the Affidavit of Jason Kollbaum (Docket #65-17), deponent (Jason Kollbaum) claimed in

section "10" of this same document, that he:

> "never approved any request, whether written or verbal, from Michael Rotondo to change his
>
> availability in a manner not in compliance with the company's availability standards.
>
> Specifically, I have never approved a request from Michael Rotondo permitting him to never
>
> be scheduled to work on a Saturday."

Plaintiff denied this same claim of Jason Kollbaum, and cites his statement of material facts below,

in support of this.

5.      In the Affidavit of Jason Kollbaum (Docket #65-17), deponent (Jason Kollbaum) claimed in

section "12" of this same document, that:

> "Michael Rotondo never submitted a written request for an accommodation to depart from
>
> the availability standards to myself or any other manager."

Plaintiff denies this claim and cites in support, pages 22-24 of Defendant's "Exhibit A to Rule 26

disclosure; bates stamp BBS00278-BBS00280, which shows that Plaintiff had all Saturdays off in

perpetuity approved by the Defendant which thereby shows, that there must have been a request

submitted for an accommodation to depart from the availability standards. Jason Kollbaum approved

the Plaintiff's request to have all Saturday's off in perpetuity, Plaintiff cites his statement of material

facts below in support of this same claim.

6.      In the Affidavit of Jason Kollbaum (Docket #65-17), deponent (Jason Kollbaum) makes

several claims in section "13" of this same document. In response to this same "section 13", Plaintiff

denies that he himself "failed to meed company standards and expectations" and further denies that he failed to "comply with applicable policies, and cooperate as a Best Buy team member" in any substantial or significant way. Further, Plaintiff claims that himself being "counseled for, among other things, failure to appear for shifts and undertake his job duties in the manner required by Best Buy policies" were themselves acts of discrimination against the Plaintiff by the Defendant.

7.      Plaintiff denies the claim made by Jason Koilbaum that "The automated system cannot be reset to override those availability standards by, for instance, insuring that a part-time employee never has a Saturday shift.", as claimed in section "16" of the Affidavit of Jason Kollbaum, and cites in support of this, pages 22-24 of Defendant's "Exhibit A to Rule 26 disclosure; bates stamp BBS00278-BBS00280, which shows that the Plaintiff had all Saturdays off in perpetuity approved by the Defendant and, Plaintiff claims that this same "automated system" can in fact, insure that a part-time employee never has a Saturday shift, as these same pages 22-24 of Defendant's "Exhibit A to Rule 26 disclosure; bates stamp BBS00278-BBS00280, are from the same system that the deponent describes in section "16" in his affidavit.

8.      Plaintiff denies the claim made by Jason Kollbaum that "Requests cannot be for a recurring date", as claimed in the Affidavit of Jason Kollbaum (Docket #65-17) and, cites in support of this pages 22-24 of Defendant's "Exhibit A to Rule 26 disclosure; bates stamp BBS00278-BBS00280, as these pages clearly show the Plaintiff's unavailability for Saturdays; a "recurring date".

9.      Plaintiff denies that he was obligated to show up for his October 31, 2015 shift, and further denies that he "ceased showing up for scheduled shifts".

10.     The Plaintiff had told Jason Kollbaum that he himself saw his son on Saturdays, when he thanked Jason Kollbaum for approving his request to have all Saturday's off in perpetuity. Thereby,

Jason Kollbaum knew that the Plaintiff had a child, and knew that he the Plaintiff saw his child on Saturdays.

11.     Plaintiff denies deponent's claim that "There is no benefit or disadvantage to an employee being placed in either the portable audio section of the store or the networking section of the store."

12.     Plaintiff claims that this affidavit of Jason Kolibaum does not in fact deny that he (Jason Kollbaum) approved the Plaintiff's request to have all Saturday's off in perpetuity; As none of these claims (or counterclaims) above deny that the employee numbers of Jason Kollbaum were "M106940" as they have claimed to be in Plaintiff's documents filed previously to this response; specifically, Plaintiff's exhibits "B", "C", and "D", from the Plaintiff's motion for summary judgment entered 11/1/2017 (Docket #36). These same exhibits "B", "C", and "D" are images of the Defendant's record of the approval of the Plaintiff's request to have all Saturdays off in perpetuity, and were approved by the employee which is identified as "M106940". The Plaintiff has claimed that "M106940" are (at minimal, were) the employee numbers of Jason Kollbaum because, the Plaintiff's response to his request to have all Saturday's off in perpetuity originally identified Jason Kollbaum, as the individual who had approved this same request for the Plaintiff to have all Saturday's off in perpetuity, using Mr. Kollbaum's name.

## AS AND FOR A RESPONSE TO THE DEFENDANT'S STATEMENT OF MATERIAL FACTS

13.     Plaintiff denies Defendant's claim in section "2", that Plaintiff's own first cause of action in paragraph 9 of his second amended complaint, speaks to a "compliance" sought, to a court order. Plaintiff is claiming, and always had claimed, that the accommodation that he was denied in this same "first cause of action" was set fourth, by a court order, and uses the exact wording "which was due to a court order", to convey this effectively therein.

14.     In response to Defendant's section "20", Plaintiff claims that he had stated his availability as described in this same section "20", to demonstrate when he could have been available to work, if it would have meant getting the job at Best Buy. Plaintiff could have moved his visitation with his son if necessary. Defendant never reaffirmed Plaintiff's availability with him, or, to the best recollection of the Plaintiff, allow the Plaintiff an opportunity to state the meaning of the availability that he had provided. Plaintiff states in Murphy Aff. Ex. M. pg. 53-55 these same facts.

15.     In Response to Defendant's section "22", Plaintiff counterclaims that was fired on December 4, 2015 and cites in support of this, his "Exhibit R" from his statement of material facts below.

16.     In response to Defendant's sections "37", "38", "39", "40", and "41", Plaintiff denies relevance of these same PCRs described in these same sections as they were issued so long ago, that these same PCRs are not reflective of the Plaintiff as an employee or otherwise at present.

17.     The Plaintiff objects to this claim in section "47", as Murphy Aff. Ex. C, BBS00175 does not speak to these claims described in this same section "47".

18.     In response to Defendant's section "48", Plaintiff claims that he had not been made aware of these same shifts described in section "48", that he was late/absent for, because these same shifts were absent on the cellular phone application that the Plaintiff used to view his shifts.

19.     In response to Defendant's section "49", The Plaintiff claims that the Defendant had agreed to the Plaintiff being unavailable for work on all Saturday's in perpetuity, in such a way that the Plaintiff could depend on this same agreement, and cites in support of this, pages 22-24 of

Defendant's "Exhibit A to Rule 26 disclosure, bates stamp BBS00278-BBS00280 and, Plaintiff's "Exhibit R" from his statement of material facts below.

20.    In response to Defendant's section "55", A "written request", such as the one described in section "55", is not stated as required in the "Availability Standards" ("Exhibit T"). The requests for an availability change is done through a computer application, which is what the Plaintiff had used to make his request.

21.    In response to Defendant's section "58"; Plaintiff's availability was in compliance with Best Buy's availability standards, because this same availability of the Plaintiff's was approved by the General Manager. In support of this same claim, Plaintiff cites his "Exhibit T" (Availability Standards) and "Exhibit R" (Findings of the New York State Department of Labor, stating that the Plaintiff's availability request was approved by Jason Kollbaum) from Plaintiff's statement of material facts below.

22.    In response to Defendant's sections "59" and "60"; Plaintiff did not show up for these same "shifts" because he had been fired.

23.    In response to Defendant's section "61", The Plaintiff was fired for not amending his work availability agreement, and cites in support of this his statement of material facts below.

24.    In response to Defendant's section "66", The Plaintiff claims that Mr. Kolibaum did know that the Plaintiff had a young son that he (the Plaintiff) saw on Saturday's. The Plaintiff cites in support of this Murphy Aff. Ex. M, BBS00278 pgs. 87-88.

## AS AND FOR A RESPONSE TO THE DEFENDANT'S MEMORANDUM OF LAW

25.     In response to Defendant's "POINT I" that the Plaintiff is not a member of a protected class, the Plaintiff is a single parent who is male, single parents who were female were not treated the same way as the Plaintiff was. From this, the Plaintiff was discriminated against based on his sex.

26.     In response to Defendant's "POINT I" that the Plaintiff was not qualified for his position, the Plaintiff provided the following:

26(a).  Plaintiff was qualified for the position and in support of this, Plaintiff cites his own "Exhibit R" from his statement of material facts below in which, it is stated that he the Plaintiff had worked for the Defendant for three years, before being terminated for not amending his work agreement to include Saturdays. If the Plaintiff was not qualified, the Plaintiff would not reasonably have been kept on as an employee for three years.

26(b).  The Plaintiff's record of attendance and "tardiness" was that of a dedicated employee and, the Plaintiff has claimed and continues to claim that much of the documentation produced by the Defendant against him as an employee, were unsubstantiated grievances between the Plaintiff and the Defendant and thereby themselves acts of discrimination by the Defendant against the Plaintiff.

26(c).  The Plaintiff had an agreement between himself and the Defendant that he could depend on, for being unavailable for work on all Saturdays in perpetuity, and cites his statement of material facts below in support of this.

26(d).  Plaintiff claims that, his claim which states he was not available on Saturdays pursuant to court order, is not false, the Plaintiff saw his son on Saturdays, instead of seeing his son on Sundays; which these same Sundays are described in this same court order as a day for the Plaintiff to visit with his son.

26(e).  Plaintiff denies Defendant's claim that he and Ms. Gasparini "defied" their "Order of Custody and Parenting time", by changing the days in this same order, to days that reflected their work schedule(s). Further, Plaintiff now understands that it would have been prudent of him to have

the "Order of Custody and Parenting time" amended, to reflect these mutually agreed upon changes as, the visitation arrangement between parties, being itself reflected in a court order, is the advantage of the existence of this same court order.

26(f).  Plaintiff denies that he was spoken to by the General Manager about his "failure to meet availability standards", as claimed by the Defendant.

26(g).  Plaintiff did not need to explicitly "request an accommodation to have availability that departed from Best Buy's availability" because his request for all Saturdays off in perpetuity was approved by the general manager. The Plaintiff cites his statement of material facts below in support of this.

26(h).  These same documents from the Plaintiff's "well-documented history of failing to meet company standards and expectations", were themselves acts of discrimination against the Plaintiff. The Plaintiff cites his statement of material facts below in support of this.

26(i).  The Plaintiff's productivity was substantially lower than his coworkers as a result of him being discriminated against, and cites his statement of material facts below in support of this.


27.     In response to Defendant's "POINT I" that the Plaintiff has failed to raise an inference of discrimination, the Plaintiff provides the following:

27(a).  The Plaintiff claims he was discriminated against, and cites his statement of material facts below in support of this.

27(b).  The Plaintiff claims that the adverse action taken against him by the Defendant was discriminatory, and cites his statement of material facts below in support of this.

27(c).  Plaintiff was fired, and cites his "Exhibit R" from his statement of material facts below in support of this.

27(d).  Plaintiff was placed in the portable audio and networking sections of his department as a form of harassment and claims that it was a discriminatory action, and cites his statement of material facts below in support of this.

27(e).  The Plaintiff claims he was scheduled on Saturdays to harass him with his parenting time with his son, and cites his statement of material facts below in support of this.

27(f).  The Plaintiff claims that Jason Kollbaum knew that the Plaintiff had a young son that he saw on Saturdays. The Plaintiff cites in support of this Murphy Aff. Ex. M, BBS00278 pgs. 87-88.

27(g).  The Plaintiff is claiming that he was treated differently than single parents who were female. In support of this, the Plaintiff cites his statement of material facts below in support of this.

27(h).  The Plaintiff claims that the Defendant failed to promote him, and cites his statement of material facts below in support of this.

27(i).  The Plaintiff claims that he has established a prima facie case of intentional discrimination against Best Buy, and defendant's motion for summary judgment should be denied.


28.     In response to Defendant's "POINT I" that the Defendant had a legitimate non-discriminatory reason for any adverse action taken against plaintiff, the Plaintiff provided the following:

28(a).  The Plaintiff claims that he has established a prima facie case of employment discrimination, and cites his statement of material facts below in support of this.

28(b).  Plaintiff has claimed that much of the documentation against him as an employee, were unsubstantiated grievances between the Plaintiff and the Defendant and thereby, themselves acts of discrimination by the Defendant against the Plaintiff. The Plaintiff cites his statement of material facts below in support of this.

28(c).  The Plaintiff had an agreement between himself and the Defendant that he could depend on, for being unavailable for work on all Saturdays in perpetuity, and cites his statement of material facts below in support of this.

28(d).  Plaintiff did not need to explicitly "request an accommodation to have availability that departed from Best Buy's availability" because his request for all Saturdays off in perpetuity was approved by the general manager. The Plaintiff cites his statement of material facts below in support of this.

28(e).  Plaintiff was fired, and cites his "Exhibit R" from his statement of material facts below in support of this.

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS

29.    The Plaintiff filed a letter with the court on November 1, 2017, describing why he felt the need to file motions that both compel discovery and dispose of this case; which those motions that both compel discovery and dispose of this case had also filed along with this same letter. In this same letter, the Plaintiff describes how the Defendant was unwilling to develop a case management plan with the Plaintiff, prior to the Rule 16 conference and, the Defendant was unwilling to discuss the Plaintiff's case with him in any way and, that these were the reasons why the Plaintiff believed that he had to file motions with the court as, the Defendant was unwilling to participate in the case in any way. These facts are depicted in this same letter to the court, entitled "Explanation for filing discovery", itself annexed hereto as "Exhibit A".

30.    Defendant serves onto Plaintiff their own "First set of interrogatories and request for production of documents", dated November 1, 2017. Plaintiff claims that this same service occurred only after he had filed his November 1, 2017, Docket entries 25-36; which were his letter "Explanation for filing discovery", motions to compel discovery, and a dispositive motion. This

same Defendant's own "First set of interrogatories and request for production of documents" is annexed hereto as "Exhibit B".

31.     The court ruled that the Plaintiff's motions to compel discovery (Docket numbers 27-36) were filed prematurely.

32.     Defendant's "First set of interrogatories and request for production of documents" (Exhibit B) did not speak to the operative pleading, this can be seen by reading interrogatory "5" from "Exhibit B" and then reading paragraph 8(b) of the operative pleading. This same error is described very clearly to the Defendant in a letter from the Plaintiff to the Defendant entitled "Response to interrogatories and request for production of documents", which is itself dated November 5, 2017. This same "Response to interrogatories and request for production of documents" of the Plaintiff's, is annexed hereto as "Exhibit C".

33.     Plaintiff served onto the Defendant his own "Plaintiff's request for discovery and admissions". This same "Plaintiff's request for discovery and admissions" is annexed hereto as "Exhibit D". This "Exhibit D", describes the discovery motions, which were filed with the court on November 1, 2017, and, those motions were attached to this "Plaintiff's request for discovery and admissions" upon service onto the Defendant. These same discovery motions filed on November 1, 2017 are not attached to this "Exhibit D" because they consist of too many pages to attach to this motion, so they are provided by reference to the case docket, numbers 27-35.

34.     Defendant responds to Plaintiff's "Response to interrogatories and request for production of documents" (Exhibit C), with a letter dated November 16, 2017, in which it is asserted by the Defendant that it is the consideration of the Plaintiff, that the numbers of the interrogatories need to correspond in subject matter to the numbers in the complaint, and that this is an error on behalf of

the Plaintiff; This was an egregious misinterpretation of Plaintiff's "Response to interrogatories and request for production of documents" (Exhibit C). Defendant's same letter dated November 16, 2017, is annexed hereto as "Exhibit E".

35.     Plaintiff responds to Defendant's letter dated November 16, 2017 (Exhibit E) with Plaintiff's "2nd response to interrogatories and request for production of documents", itself dated November 18, 2017, in which the Plaintiff spells out for the Defendant, how they may see the error in their "First set of interrogatories and request for production of documents" (Exhibit B). This same "2nd response to interrogatories and request for production of documents" of the Plaintiff's goes ignored by the Defendant. This same "2nd response to interrogatories and request for production of documents" of the Plaintiff's is annexed hereto as "Exhibit F".

36.     The Defendant Responds to "Plaintiff's request for discovery and admissions" (Exhibit D), with their December 6, 2017 "Response to request for discovery and admissions" in which, the Defendant denies that they have to respond to the concatenated documents, because those same concatenated documents were denied by the court as premature, while those same concatenated documents were motions. Plaintiff claims that Defendant's claim that Defendant doesn't have to respond to those same concatenated documents is unreasonable. Defendant's same December 6, 2017 "Response to request for discovery and admissions" is annexed hereto as "Exhibit G".

37.     After 30 days had passed since the Plaintiff had served his own "2nd response to interrogatories and request for production of documents" (Exhibit F), the Plaintiff had filed a dispositive motion (Docket number 45), based on Defendant's failure to defend as, the Defendant would not discuss the case with the Plaintiff prior to the Rule 16 conference and then subsequently refused to amend their own "First set of interrogatories and request for production of documents",

(Exhibit B) to reflect the (or any) operative pleading in spite of the numerous and crystal clear requests by the Plaintiff, for the Defendant to do so.

38.     The Plaintiff had served onto Defendant, notices to take the depositions of both Joshua Louie and "Mary" and also, served onto the Defendant "Plaintiff's request for documents, interrogatories, and admissions", all onto the Defendant on April 23, 2018. This same notice to take deposition of Joshua Louie is annexed hereto as "Exhibit H", and this same notice to take deposition of Mary is annexed hereto as "Exhibit I", and this same "Plaintiff's request for documents, interrogatories, and admissions" is annexed hereto as "Exhibit J".

39.     Defendant did not respond to either of Plaintiff's notices, to take the depositions of Joshua Louie or "Mary".

40.     At the Plaintiff's own deposition on May 7, 2018, the Plaintiff asked the Defendant if he intended to produce Joshua Louie and "Mary" for the depositions that Defendant himself was served notice for (Exhibits "H" and "I"). The Defendant said that he himself was not available on May 10, 2018 to do those same depositions.

41.     Defendant appeared at the May 10, 2018 deposition of Christopher Richardson.

42.     During the May 10, 2018 telephone conference, the Defendant had disclosed that "Mary", who had been identified as Mary Davis, was no longer an employee of the Defendant. In response to this, the Plaintiff then represented to the Defendant during this same telephone conference, that he himself wished to depose Samantha Precourt instead of Mary Davis.

43.     On May 15, 2018 at 10:44 AM, the Plaintiff received from the Defendant a "Letter to Rotondo re depositions.pdf" via email. In this same letter, the Defendant stated that Mary Davis and Samantha Precourt are not employees of the Defendant. This same "Letter to Rotondo re depositions.pdf" is annexed hereto as "Exhibit K".

44.     On May 15, 2018 at 1:04 PM, the Plaintiff asked the Defendant to "Please return to me the checks for Mary, and Mariah Goddard." vi email. This same email is annexed hereto as "Exhibit L".

45.     On May 15, 2018 at 2:24 PM, the Plaintiff asked through email, if the Defendant will respond to the Plaintiff's request for the checks of Mary and Mariah Goddard; through the reference of his previous request of the Defendant (Exhibit L) for those same checks. The response from the Defendant was that these checks will be mailed back to him (the Plaintiff). This same response is annexed hereto as "Exhibit M".

46.     On May 16, 2018 at 11:26 AM, the Plaintiff had attempted to schedule the deposition of "Mary's" replacement, who was herself Samantha Precourt, after the date for the deadline for discovery had passed. The Plaintiff did this because, the Plaintiff needed enough time to serve a Rule 45 subpoena onto Samantha Precourt. With the challenge that the Defendant had turned the deposition of "Mary" into, by not responding to the Plaintiff's notice to take deposition of her, the Plaintiff did not have enough time to serve a Rule 45 subpoena onto Samantha Precourt, unless the deposition date was after the deadline for discovery. The Defendant was unwilling to schedule the Rule 45 depositions of Samantha Precourt past the discovery deadline, which prevented her testimony from being procured for this case. The correspondence in which the Defendant had refused to make himself available for a deposition scheduled after the discovery deadline, is annexed hereto as "Exhibit M".

47.    On May 21, 2018 at 1:14 PM, the Plaintiff sent a letter to the Defendant via email, stating that he wishes to depose Joshua Louie and, describes the manner in which the Defendant has made this same deposition of Joshua Louie difficult for himself. This same letter sent via email is annexed hereto as "Exhibit N".

48.    On May 21, 2018 at 3:25 PM, the Plaintiff received the Defendant's response to his "Plaintiff's request for documents, interrogatories, and admissions". Within this same response of the Defendant's, Joshua Louie is characterized as a "nonparty". This same response by the Defendant is annexed hereto as "Exhibit O".

49.    On May 21, 2018 at 3:26 PM, the Plaintiff received an email from the Defendant stating that Joshua Louie isn't an employee of the Defendant. This same email is annexed hereto as "Exhibit P".

50.    The Plaintiff claims that the Defendant had set fourth that Joshua Louie was an employee of the Defendant by not disclosing to the Plaintiff that, Joshua Louie was not an employee of the Defendant while, simultaneously having disclosed that other individuals named as employees in the same instance(s) as Joshua Louie, were disclosed as not being employees of the Defendant. The Plaintiff further claims that the Defendant had prevented the testimony of Joshua Louie from being procured through the withholding of the fact that Joshua Louie was not an employee of the Defendant and also, the unwillingness of the Defendant to schedule depositions past the discovery deadline each and both.

51.    Plaintiff was harassed with his parenting time with his son, by being scheduled unnecessarily on days that the Defendant knew that the Plaintiff had parenting time with his son. This was done to the Plaintiff by the Defendant by the Defendant scheduling the Plaintiff to come into work on effectively each and every Saturday, while the Defendant had no business need to call the Plaintiff in

to work on those same Saturdays. This occurred throughout the year of 2015 and was done to the

Plaintiff by both Mariah Goddard and Martin Brown each, at the Best Buy Store located at 9090

Destiny USA Dr. Syracuse, NY 13290. This claim is supported by pages 102-111 (bates stamp

BBS00358-BBS00367) of Defendant's "Exhibit A to Rule 26 disclosure", it which it can be seen that

the Defendant scheduled the Plaintiff to come in and work on Saturdays, from 6:00 PM to 10:00

PM. This same claim could have been supported by the testimony of Joshua Louie, and to support

that it was unnecessary to schedule the Plaintiff on Saturdays, but the Defendant had fraudulently

prevented this testimony from being procured by miss-characterizing the status of Joshua Louie's

employment with the Defendant.


52.     The Respondent consistently perpetually and unfairly placed the Plaintiff in the "portable

audio" or "networking" sections of his department, instead of placing him in the section of his

department where the employees sold cellular phones. Selling cellular phones is much preferred

amongst employees, over being placed elsewhere in the department, and the Plaintiff could most

effectively be capitalized on as an employee by being placed in the department to sell cellular

phones, because of his experience in the cellular phone department. This occurred throughout the

year of 2015 and was done to the Plaintiff by both Mariah Goddard and Martin Brown each, at the

Best Buy Store located at 9090 Destiny USA Dr. Syracuse, NY 13290. This same claim could have

been supported by the testimony of Joshua Louie, but the Defendant had fraudulently prevented this

testimony from being procured by miss-characterizing the status of Joshua Louie's employment with

the Defendant.


53.     The Respondent had agreed to allow the Plaintiff to be unavailable for work on all Saturday's

in perpetuity, including the Halloween holiday on 10/31/2015. This was agreed upon on behalf of the

Defendant by the General Manager of the Best Buy store that the Plaintiff had worked at Jason

Kollbaum, whom had agreed to this same unavailability on 9/6/2015 at 3:32 CDT. In accordance

with company policy, the Plaintiff could depend on this same agreement. It was documented that the Plaintiff was reprimanded on a day shortly after 10/31/2015 by Justin Hayse, for not coming in to work on 10/31/2015. This occurred at the Best Buy Store located at 9090 Destiny USA Dr. Syracuse, NY 13290. This claim is supported by pages 22-24 (bates stamp BBS00278-BBS00280) of Defendant's "Exhibit A to Rule 26 disclosure", which shows that the Plaintiff had "all Saturdays off in perpetuity" and, the documentation of this same reprimand by Justin Hayse, for the Plaintiff not coming in to work for the Defendant on 10/31/2015. This same documentation for the same reprimand by Justin Hayse, is annexed hereto as "Exhibit Q". This documentation of this same reprimand could have been identified as exactly what the Plaintiff claims it is by the testimony of Joshua Louie, but the Defendant had fraudulently prevented this testimony from being procured, by miss-characterizing the status of Joshua Louie's employment with the Defendant.

54.     The Plaintiff was told by his supervisor Mariah Goddard that, if he did not request for the Defendant to amend his work availability agreement to include Saturdays, as a day that he was available to work, he would be terminated. This occurred at the Best Buy Store located at 9090 Destiny USA Dr. Syracuse, NY 13290. This representation that the Plaintiff would be terminated if he did not amend his work agreement with the Respondent was reiterated by Mariah Goddard to the Plaintiff on 12/4/2015 at the Best Buy Store located at 9090 Destiny USA Dr. Syracuse, NY 13290. In accordance with company policy, the Plaintiff was under no obligation to request to amend his work availability agreement with the Respondent. The Plaintiff did not request to amend his work availability agreement with the Respondent to thereafter include Saturdays. The Respondent terminated the employment of the Plaintiff on/about 12/4/2015.     This is claim is supported by the findings of fact by the New York State Department of Labor that, the Plaintiff's request for Saturdays off was approved by the general manager; This is stated on page three paragraph one of a letter sent from the New York State Department of Labor to the Plaintiff and, a copy of this letter is annexed hereto as "Exhibit R". Also, that same letter from the New York State Department of Labor

states incorrectly the nature of that same request to have Saturdays off, as pertaining to "several Saturdays" while in fact, that same request for Saturdays off, was a request for all Saturdays off in perpetuity, and not "several Saturdays", which is supported by Defendant's own availability data of the Plaintiff (pages 22-24 of Defendant's "Exhibit A to Rule 26 disclosure; bates stamp BBS00278-BBS00280), which shows that the Plaintiff had all Saturdays off in perpetuity approved by the Defendant.

55.    Other single parents who were females, were not treated the same way that the Plaintiff was. This would have been supported by the testimony of Samantha Precourt, who was herself a single female parent, but the Defendant refused to schedule a deposition past the discovery deadline date, which prevented her testimony from being procured. This same refusal for the Defendant to schedule a deposition past the discovery deadline date is annexed hereto as "Exhibit M". This claim is further supported by the answers provided by Christopher Richardson, at the Plaintiff's deposition of Mr. Richardson, In which Mr. Richardson provides that Samantha Precourt was a single parent who was female, who was not treated differently because she was a single female parent. This is evident in pages 19, and 21-22 of the transcription of this same deposition of Mr. Richardson. These same pages of the deposition of Mr. Richardson are annexed hereto as "Exhibit S".

56.    The Plaintiff was harassed with his parenting time with his son, by being exclusively scheduled on a day of the week that the Respondent knew would be most burdensome to the Plaintiff's parenting time, with his own son. This occurred between January 12, 2015 and February 12, 2015, and was done to the Plaintiff by his supervisor Martin Brown, at the Best Buy Store located at 9090 Destiny USA Dr. Syracuse, NY 13290. This is supported by page 102 (bates stamp BBS00358) of Defendant's "Exhibit A to Rule 26 disclosure" as, 1/17/2015, 1/24/2015, 1/31/2015, and 2/7/2015 are all Saturdays. Further, pages 89-91 (bates stamp BBS00345-BBS00347) of Defendant's "Exhibit A to Rule 26 disclosure", show that during the same days of the year (January

12 – February 12) of one year prior, show that the business needs for the Defendant of the Plaintiff, corresponded to 44 scheduled shifts for the Plaintiff to come in and work for the Defendant in that time span. The business needs of the Defendant for those same "times of year" are effectively identical, from one year (2014) to that subsequent year (2015).

57.     The Respondent had failed to promote the Plaintiff, this was done to the Plaintiff at the Best Buy Store located at 9090 Destiny USA Dr. Syracuse, NY 13290, some time previous to 2015.

        This claim of failure to promote is supported by page 21 (bates stamp BBS00277) of Defendant's "Exhibit A to Rule 26 disclosure" as, it describes that the Plaintiff was turned down because a better candidate was chosen because of that candidate's "education" and, the testimony of Joshua Louie to this same "education", would show that this same "education" was the experience Joshua Louie had from developing android cellular-phone applications, which was not a duty of a Best Buy sales associate under any circumstances. Also, Joshua Louie had no previous experience working at Best Buy, Joshua Louie had only worked one previous Retail job, and for a duration of 6 months and, this same 6 month duration of employment in retail shows that it is unlikely that Josh would have stayed with Best Buy, long enough to make hiring him for a full time position worthwhile. At the time of Joshua Louie's application for employment at Best Buy, the Plaintiff had been working for the Defendant (Best Buy) for years. These claims regarding the work history and "education" of Joshua Louie could have been supported by the testimony of Joshua Louie, but the Defendant had fraudulently prevented this testimony from being procured, by miss-characterizing the status of Joshua Louie's employment with the Defendant.

58.     Jason Kollbaum, a general manager, had the authority to approve the Plaintiff's request to have all Saturday's off in perpetuity, per company policy. This component of company policy is described in the internal Best Buy Stores LLC. document entitled "Availability Standards", which itself states on the fourth "bullet" from the top that:

"While we will not make exceptions to the Availability Standards, employees may

request accommodations from their General Manager and DHRM. These requests

will be approved or denied by these leaders."

Thereby clearly describing, that a General Manager may approve a request for an employee to have

all Saturday's off in perpetuity, and that should such an approval transpire, this agreement could then

be depended upon by the relevant employee. A copy of the internal Best Buy Storess LLC. document

entitled "Availability Standards", has been annexed hereto as "Exhibit T". This same "Exhibit T"

could have been identified as exactly what the Plaintiff claims it is by the testimony of Joshua Louie,

but the Defendant had fraudulently prevented this testimony from being procured, by miss-

characterizing the status of Joshua Louie's employment with the Defendant.


59.     The Defendant had demonstrated that the discrimination against the Plaintiff was systemic,

by the Defendant disregarding a report that the Plaintiff had made to the "Best Buy Human

Resources department" which was a corporate (not store) level entity, within Best Buy Stores LLC.

This is supported by pages 2-3 (bates stamp BBS00258 and BBS00259) of Defendant's "Exhibit A

to Rule 26 disclosure" in which, it can be seen that the Plaintiff's supervisor had, among other

things, "called the Plaintiff girls names"; and the resolution to this was that it had been worked out

while in fact, the lack of resolution, is demonstrated the in the further discrimination of the Plaintiff

by the Defendant, that had occurred in the years following. The "activity number 1-21V7RO" on the

bottom of bates stamp BBS00259 had marked the issue as resolved, while it was in fact not resolved;

Plaintiff claims the failure to resolve his "human resources complaint" was an act of discrimination

against him at the corporate level as, there was no actual resolution documented, for the same (a)

significant issue that the Plaintiff had brought to the attention of the "Best Buy Stores Human

Resources Department", that would certainly seem to the rational reasonable person as requiring a

thorough investigation and cohesive resolution.

60.    The Plaintiff's lost wages are described as follows. Back pay: Lost wages from the failure to promote to full time, for two years time during the years of 2014-2015, calculated by doubling my income earned for those years ($12,000 per year); as being promoted to full time would have doubled my hours from 2014 to 2015.

$24,000.

Also, from the time that I was terminated until now, calculated by two years full time at

$11.01/hour

$45,955

**Total Back-pay       $69,955**

Front pay: It cannot be reasonably considered now, that the Plaintiff can apply and then be accepted for, a position in retail management because, the Plaintiff did not get any experience in retail management because the Defendant had failed to promote him and, had terminated him before he had a chance to achieve a position in management; Because of this, the front pay is reflective of the fact that in order for the Plaintiff to now, attempt to achieve a position in retail management, he would have to start in an 'introductory position', which would then take years for him to gain the necessary experience, and then advance into, a higher paying management position. The Plaintiff places the value of these lost wages at $22,147.

**Total Front-pay       $22,147**

**Total Front-pay and Back-pay added**

**$92,102**

Less the Plaintiff's income since he had been employed by the Respondent, which is as follows:

Unemployment:  $2301.00

Day-labor:       $350

Odd-jobs:        $1500

Ski-instructor:$1402.10

Computer business:$650

Total to subtract:     **$6,203.10**

**Total lost wages, Inclusive of income since 12/4/2015**

**$85,898.90**

61.     The Defendant had discriminated against the Plaintiff because of his gender/male by reprimanding him for reasonable mistakes that were of no fault of his own. These same mistakes stemmed from the inherent complexity of his job and, were mistakes that were in no way unique to the Plaintiff himself and, were clearly moot issues to all the parties involved, including the Defendant. This is supported by the documentation of these reprimands, which are annexed hereto as all of "Exhibit U", "Exhibit V", and "Exhibit W". This documentation of these same reprimands could have been identified as exactly what the Plaintiff claims they are, through the testimony of Joshua Louie, but the Defendant had fraudulently prevented this testimony from being procured, by miss-characterizing the status of Joshua Louie's employment with the Defendant.

62.     The Defendant has not provided any defense as of yet which would cast any doubt onto the allegations of discrimination brought against the Defendant by the Plaintiff.

63.     The Plaintiff claims that the Defendant has refused to provide reasonable responses to the Plaintiff's requested admissions, interrogatories, and production of documents; and also impeded the Plaintiff's depositions, because all of this evidence that would have been collected by the Plaintiff, would have shown that he Defendant has discriminated against the Plaintiff in such a way that is no less egregious then the way that the Plaintiff has described and characterizes this same discrimination to be.

## PLAINTIFF'S MEMORANDUM OF LAW

64.    The Defendant had violated New York Codes Rules and Regulations Part 142 § 142-2.3 Call-in pay. which states:

> "An employee who by request or permission of the employer reports for work on any
>
> day shall be paid for at least four hours, or the number of hours in the regularly
>
> scheduled shift, whichever is less, at the basic minimum hourly wage. "

Which shows that the Defendant was so committed to the discrimination of the Plaintiff, that the

Defendant was willing to commit a separate violation of New York State law in order to pursue

that same discrimination against him.


65.    In Margaret Weichert v. E-Finance Call Center[1], the Plaintiff was awarded $154,000 in

emotional distress and punitive damages for each and both of, discriminatory pay and retaliatory

discharge. Back pay was also awarded, but this figure is not incorporated into the same $154,000

above.


66(a).  The matter of Margaret Weichert v. E-Finance Call Center pales in comparison to this matter

Michael J Rotondo v. Best Buy Stores LLC. The Plaintiff has claimed the following acts of

discrimination based on his sex, which each are willful violations of Title VII of the Civil Rights Act

of 1964 as amended.

> 66(b).  For the emotional distress of, the Plaintiff's humiliation and aggravation of having to
>
> be brought into work during times that the Plaintiff and his coworkers knew that the Plaintiff
>
> did not need to be called in for work and,

---

1. Margaret Weichert v. E-Finance Call Center; United States District Court Eastern District of

Kansas: Case 2:13-cv-02493-KHV Docket# 178

66(c).  For the emotional distress of, the Plaintiff's humiliation and aggravation for being scheduled in the tedious "portable audio" and "networking" sections of his department, in spite of his veterancy and skill with customers and,

66(d).  For the emotional distress of, the pressure the Defendant had put onto the Plaintiff to forgo trick-or-treating with his son, on the Halloween holiday of October 31, 2017 and,

66(e).  For the emotional distress of, the Plaintiff having to forgo some of his parenting time with his child, for effectively every Saturday of 2015 and,

66(e).  For the emotional distress and aggravation of, the Plaintiff being scheduled exclusively on Saturdays, for a portion of 2015 and,

66(f).  For the emotional distress of, the aggravation for the Plaintiff having to attempt to compel the Defendant to adhere to their agreement to allow the Plaintiff to have all Saturdays off in perpetuity and,

66(g).  For the emotional distress of, the retaliatory termination of the Plaintiff for not allowing the Defendant to coerce the Plaintiff into agreeing to being available for work during a time that the Plaintiff had parenting time with his son and,

66(h). For the emotional distress of, the humiliation of the Plaintiff for the Defendant failing to promote him.

67.     Defendant refused to honor their agreement with the Plaintiff to allow him to be unavailable for work on all Saturdays in perpetuity. The Defendant thereby violated Plaintiff's rights under 42 U.S.C. §1981.

68.     It is the overwhelming belief of the Plaintiff that these acts of discrimination easily substantiate the Plaintiff's motion for judgment in the amount sought, of $388,000, as this matter of Michael J Rotondo v. Best Buy Stores LLC., is inclusive of discrimination which is minimally, twice as egregious, as the matter of Margaret Weichert v. E-Finance Call Center.

        **WHEREFORE, the Plaintiff requests that the court deny Defendant's motion for summary judgment, itself entered June 6, 2018 and, for a Judgment to be entered against the Defendant, awarding the Plaintiff the amount of $388,000, together with such other and further relief as to the Court may deem just and proper.**

DATED:      July __9__, 2018

                                        _____

                                        MICHAEL J. ROTONDO

                                        Plaintiff

                                        P.O. Box 1

                                        Camillus, NY 13031-0001

Sworn to before me this

____ day of _____; 20__

_____

JOSEPHINE INCASSATI
Notary Public, State of New York
No. 01IN6321582
Qualified in Onondaga County
Commission Expires 03/23/20__