UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL JOSEPH ROTONDO,

                              Plaintiff,

        -v-                                        5:17-CV-522

BEST BUY STORES LLC,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

MICHAEL JOSEPH ROTONDO
Plaintiff pro se
P.O. Box #1
Camillus, NY 13031

CARTER, CONBOY, CASE, BLACKMORE,          MICHAEL J. MURPHY, ESQ.
    MALONEY & LAIRD, P.C.                  BRIENNA L. CHRISTIANO, ESQ.
Attorneys for Defendant
20 Corporate Woods Boulevard
Albany, NY 12211

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

        Plaintiff Michael Joseph Rotondo ("plaintiff" or "Rotondo"), proceeding pro se, brings

this employment discrimination action against his former employer Best Buy Stores LLC

("defendant" or "Best Buy").  Rotondo alleges claims under Title VII of the Civil Rights Act of

1964 ("Title VII").

The parties have cross-moved for summary judgment under Federal Rule of Civil Procedure ("Rule") 56. The motions are fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND

### A. Northern District of New York Local Rules

Before discussing the facts and background of this case, the deficiencies in the parties' submissions must be addressed.

First, the Second Circuit requires that a pro se litigant defending against a summary judgment motion be notified as to the nature and consequences of summary judgment. Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620–21 (2d Cir. 1999); Schafler v. Summer, 63 F. App'x 581, 583 (2d Cir. 2003) (summary order); see also Local Rule 56.2 (Notice to Pro Se Litigants of the Consequences of Failing to Respond to a Summary Judgment Motion)[1]; Local Rule 7.1(a)(3).[2] There is nothing in the record to indicate that defendant provided plaintiff with such notice and thus it failed to meet the requirements of Local Rule 56.2 and that portion of Local Rule 7.1(a)(3).

Next, plaintiff's opposition to defendant's motion for summary judgment fails to comply with Local Rule 7.1(a) which provides that all opposition to motions "require a memorandum

---

[1] Local Rule 56.2 provides:

When moving for summary judgment against a pro se litigant, the moving party shall inform the pro se litigant of the consequences of failing to respond to the summary judgment motion. Counsel for the moving party shall send a notice to the pro se litigant that a motion for summary judgment seeks dismissal of some or all of the claims or defenses asserted in their complaint or answer and that the pro se litigant's failure to respond to the motion may result in the Court entering a judgment against the pro se litigant. Parties can obtain a sample notice from the Court's webpage at "www.nynd.uscourts.gov"

[2] Local Rule 7.1(a)(3) provides in relevant part: "The moving party shall also advise pro se litigants about the consequences of their failure to respond to a motion for summary judgment. See also L.R. 56.2."

of law, supporting affidavit, and proof of service on all the parties." Rotondo's opposition, Dkt. No. 73, appears to respond, within the four corners of *one* document, to each of defendant's various filings in support of its motion for summary judgment. Specifically, plaintiff has titled separate sections responding to the affidavit of Jason Kolbaum, defendant's Statement of Material Facts, and defendant's Memorandum of Law. He has included a section titled "Plaintiff's Statement of Material Facts."

Turning to defendant's motion for summary judgment, Best Buy, has as required, submitted a "Statement of Material Facts" pursuant to Local Rule 7.1(a)(3).[3] Dkt. No. 65–21. Rotondo failed to appropriately respond to defendant's Statement of Material Facts. In its reply, Best Buy points out his shortcomings, arguing that plaintiff's response to its Statement of Material Facts was not proper. Best Buy asserts that Rotondo "both fails to provide proper citations to admissible evidence in support of his factual assertions, and his assertions are directly contradicted by the record before the Court" and further, only "sporadically responded" to Defendant's Statement of Material Facts. Def.'s Reply Mem. of Law, Dkt. No. 74–7, 3. In light of these failings, defendant urges that the factual allegations contained in its Statement of Material Facts be deemed admitted for purposes of its summary judgment motion.

---

[3] Local Rule 7.1(a)(3) states in relevant part:

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert. The non-movant's response may also set forth a short and concise statement of any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs, followed by a specific citation to the record where the fact is established.

With respect to plaintiff's motion for summary judgment, this too fails to comply with Local Rule 7.1(c) which provides that "[a] party may file and serve a cross-motion (meaning a request for relief that competes with the relief requested by another party against the cross-moving party) at the time it files and serves its opposition papers to the original motion . . . [a] separate brief in opposition to the original motion is not permissible." Rotondo filed what can be titled a cross-motion, Dkt. No. 67, and then separately filed his opposition to Best Buy's motion, Dkt. No. 73, in violation of the Local Rules. Though he submitted a Statement of Material Facts in support of his own motion, his facts do not "set forth a specific citation to the record where the fact is established" as required by Local Rule 7.1(a)(3).

Despite omissions and deficiencies, courts are flexible with their interpretation of the Local Rules to, "prevent the elevation of procedure over substance where the evidence submitted by the parties has pointed to the existence of disputed material of facts." Rivera v. Nat'l R.R. Passenger Corp., 152 F.R.D. 479, 483 (S.D.N.Y. 1993). While both parties failed to comply with the applicable Local Rules, the Court has broad discretion to decide whether to overlook the parties' failures and perform an independent review of the record. Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001); see also Monahan v. City of N.Y. Dep't of Corr., 214 F.3d 275, 292 (2d Cir. 2000); Cruz v. Church, No. 9:05-CV-1067, 2008 WL 4891165, at *3, n.4 (N.D.N.Y. 2008) (collecting cases) (Suddaby, J.).

Mindful of Rotondo's pro se status, the potentially case-ending nature of defendant's motion, *and* defendant's own failure to comply with the Local Rules, this Court will, in its discretion, conduct such a review. Plaintiff's various submissions have been independently reviewed to identify any genuine disputes over the facts. Upon review, defendant's Statement of Material Facts will be accepted as true to the extent that the facts are supported

by evidence in the record.  See Orraca v. Pilatich, No. 9:05-CV-1305, 2008 WL 4443274, at *3 (N.D.N.Y. 2008); see also N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648–49 (2d Cir. 2005).  Local Rule 7.1 expressly states that "[t]he record, for purposes of the Statement of Material Facts, includes the pleadings, depositions, answers to interrogatories, admissions and affidavits."

## B. Factual Background

Unless otherwise noted, the following facts were asserted and supported by defendant in its Statement of Material Facts ("Def.'s SMF") and not successfully denied by plaintiff in his Response Statement of Material Facts that both matched the paragraphs of defendant's Statement of Material Facts and specifically cited the record where the factual issue arises, as required by Local Rule 7.1(c).[4]

Plaintiff, as of May 2018, was a thirty year old single father residing with his parents at their Camillus, New York home.  As of that date, he had an eight year old son who resided with the child's mother, also in Camillus, New York.  Through the relevant time period for this action, Rotondo and the child's mother had a court agreement in place regarding visitation. The Order of Custody and Parenting Time ("Court Order"), entered into on October 24, 2011, set forth that plaintiff had parenting time with his child as follows:  each and every Tuesday, from 1:00 p.m. until 9:00 p.m.; each and every Friday, from 1:00 p.m. until 9:00 p.m.; each and every Sunday, from 10:00 a.m. until 6:00 p.m.; one overnight per week, from 6:00 p.m. until 12:00 p.m. the following day, on the day of the week as mutually agreed by the parties.

---

[4] Also considered were any facts supported by the record and not otherwise denied with support in plaintiff's Statement of Additional Material Facts, defendant's Response to Plaintiff's Statement of Additional Material Facts, and the exhibits and affidavits submitted in connection with the motions.

Rotondo testified that he and the child's mother verbally modified the Court Order, allowing for him to have parenting time on Saturdays.

Rotondo was first hired by Best Buy in March 2005 as a part-time Sales Consultant at its Syracuse location, Store #538. He held that role until November 2006 when he left to take another job.

Best Buy rehired plaintiff as a seasonal (temporary part-time) employee in the role of Wireless Sales Consultant in the mobile phone department on November 18, 2012. That department included portable audio devices such as Bluetooth speakers, headphones, cellular phones, and cellular phone accessories.

On his Employment Application Summary, he listed his "available work schedule" as Monday mornings, all day Tuesday through Thursday, Friday mornings, and all day Saturday and Sunday. On November 27, 2012, Rotondo filled out an "Availability Form" indicating that his availability was all day Sunday, Monday, Wednesday, and Thursday, and beginning at 5:00 p.m. on Saturday. He did not provide an explanation for why his availability changed during this time.

Rotondo was promoted to a part-time employee in March 2013. Best Buy Availability Standards require that part-time employees are available as follows:

- Two weekday closing shifts and/or two weekday opening shifts, and three of five weekend shifts (including at least one Saturday shift and one Sunday shift)
- Or, all four Saturday and Sunday shifts
- Or, four of five weekday opening shifts

The Availability Standards provide that "[w]hile [Best Buy] will not make exceptions to the Availability Standards, employees may request accommodations from their General Manager and DHRM. These requests will be approved or denied by these leaders."

Scheduling of employees for shifts at Best Buy is accomplished through an automated system, which is set to be consistent with the Availability Standards. The automated system cannot be reset to override those standards by, for instance, insuring that a part-time employee never has a Saturday shift. However, part-time employees are allowed to request specific days off; those days are accommodated, when possible, by a store manager. The request must be made before the schedule is set, must be for a specific date or dates, and cannot be for a recurring date.

Rotondo testified that in early 2013, he told Chris Richardson, then a Sales Manager, that he was unavailable to work Saturdays because he saw his son on that day. According to plaintiff, Richardson "concurred with my representation that I would not be available and was not available." Rotondo contends that after Richardson left Best Buy's employ, he was scheduled to work Saturdays. He testified that he did not know who made the schedule and does not recall objecting to same, but also testified that he complained about being scheduled to work Saturdays.

Plaintiff contends he spoke with multiple people regarding not being scheduled to work on Saturdays, but does not recall when or with whom those conversations took place. He speculates that after being scheduled for Saturdays, he "probably" told supervisor Imoni Jenkins or Connections Manager Martin Brown ("Mgr. Brown") how he was unavailable to work Saturdays. In the same breathe, plaintiff testified that he had an agreement not to work Saturdays, made on behalf of Best Buy by General Manager Jason Kolbaum ("GM Kolbaum"). GM Kolbaum denies that he ever made such an agreement with Rotondo.

On September 20, 2013, plaintiff applied for the position of Geek Squad Cadet. He was turned down due to Best Buy's inability to contact him. On October 8, 2013, Rotondo

applied for the position of full-time Home Theater Sales Associate. The disposition was "Better Suited Candidate Selection - Experience." On October 27, 2013, he applied for the position of full-time Computer/Table Sales Associate. The stated reason for him not getting the position was "Better Suited Candidate Selected - Job Specific Knowledge/Skills." On December 13, 2013, plaintiff applied for the position of full-time Mobile Sales Consultant. The disposition reason was "Better Suited Candidate Selection - Other Objective Criteria." On April 21, 2014, he applied for the position of Mobile Sales Consultant. He was turned down for the position and provided the following explanation: "Better Suited Candidate Selection - Education."

Throughout his tenure, Best Buy issued to Rotondo numerous Performance Counseling Records ("PCRs") as well as verbal warnings regarding his attendance and performance. On June 12, 2013 a supervisor (it appears by the name of Matt Nichols) issued plaintiff a PCR for unacceptable performance after he failed to use the required recommendation sheets and failed to mention certain information during multiple customer transactions. On June 26, 2013, a different supervisor issued Rotondo a PCR for unacceptable performance after he failed to introduce and use the required recommendation sheets during an iPod sale.

On June 7, 2014, Mgr. Brown issued plaintiff a PCR for unacceptable performance after he offered the Best Buy credit card to a customer and incorrectly told the customer he would get 10% back in rewards. The 10% back was an expired promotion and the current promotion was 6%. To honor what he told the customer, Best Buy had to take unnecessary margin erosion at the point of sale to mark down the difference between the promotions. Later that month, on June 24, 2014, Mgr. Brown issued Rotondo a PCR for unacceptable

performance and falsification of records relating to the improper processing of an iPhone upgrade. Rotondo had failed to ensure that the phone he was taking in on trade was in good condition and therefore, gave a credit that the customer should not have received.

After GM Kolbaum transferred to the Syracuse store in November 2014, he determined that Best Buy's Availability Standards had not been in place at the store and began working to ensure that all employees met those standards. In doing so, he generally provided employees a ninety to 120 day window to open up their availability to meet the store's standards.

GM Kolbaum contends that he did not approve any request from plaintiff to change his availability in a manner not in compliance with the store's Availability Standards. Specifically, he never approved a request from Rotondo to never be scheduled to work Saturdays. Further, plaintiff did not submit a written request for an accommodation to depart from the Availability Standards to GM Kolbaum, the prior GM, or any other manager. Rotondo disputes that a written request was required and contends he used the store's scheduling "app" to make the request.

Plaintiff continued to receive verbal and written warnings regarding his performance. On November 24, 2014, Mgr. Brown issued plaintiff a PCR for unacceptable performance the preceding day. On the prior day, Rotondo, scheduled to work in the portable audio zone of the store, had traded with a coworker so he could be in the mobile phone department. Notwithstanding the fact that he had made himself the mobile phone department host, he abandoned his position for over a half an hour and did not communicate this which led to customer disappointment.

On December 14, 2014, Mgr. Brown issued Rotondo a PCR for unacceptable performance on December 7, 2014. On that day, plaintiff was one of three closing employees for the store, and the following morning there were multiple missing price tags throughout the Mobile and Portable Audio areas, a tote of random mobile accessories were left out, and drinks and clutter were left on the desk and counter of the consultation area.

On December 30, 2014, Mgr. Brown issued Rotondo a PCR for violation of a rule/policy and falsification of records on December 27, 2014, when he intentionally activated an iPhone as a standard upgrade even though it was an early upgrade, so that the customer would get the phone at the standard upgrade price. This resulted in a $200 loss of revenue for the company.

Rotondo's subpar performance continued. On April 13, 2015, Mgr. Brown issued him a PCR for missing his March 2015 productivity goal; the revenue goal was $500 per hour and he obtained only $171 per hour. On May 10, 2015, Mgr. Brown issued Rotondo a PCR for missing his April 2015 productivity goal; the revenue goal was $400 per hour and he obtained only $228 per hour.

The errors and reprimands continued. On June 12, 2015, Mgr. Brown issued a PCR to Rotondo for unacceptable performance. That day, he was assigned to work in the Tablets department but on numerous occasions left his zone without communication or someone to cover his zone. When asked to return to the Tables department, he chose to argue in front of customers.

On July 3, 2015, Mgr. Brown issued plaintiff another PCR for unacceptable performance. That day, he improperly ran a mobile activation and failed to use appropriate worksheets resulting in an upset customer and poor customer interaction.

On July 12, 2015 Best Buy Assistant Manager Justin Hayes ("AM Hayes") issued plaintiff a PCR after he called in for his July 11, 2015 shift and arrived two hours and forty three minutes late for his July 12, 2015 shift.[5]  Rotondo asserted then and maintains that he did not know about these shifts.  The July 12, 2015 PCR noted his history of tardiness, including informal discipline for arriving late to shifts on February 14, March 15, and May 4, 2015.  Hayes indicated in the July 12, 2015 PCR that Rotondo "is to adhere to the Attendance / Punctuality [Policy] in its entirety for the next 6 months.  Failure to comply with the Attendance / Punctuality Policy will result in further disciplinary action up to and including termination."

On July 13, 2015, supervisor Martin Brown issued a PCR to plaintiff for failing to show up for his 6:00 p.m. to 10:00 p.m. shift on July 11, 2015.  The PCR noted that his absence "caused the connections department to be under staffed, put extra tasks on Michaels peers for closing, and caused customer wait times to increase."  It advised Rotondo to adhere to the store's attendance policy "or further actions will be taken up to and including termination of employment."

On August 20, 2015, plaintiff changed his availability to reflect that he was not available for work on Saturdays.[6]  By October 2015, Rotondo had not yet opened up his availability and was not meeting Best Buy's Availability Standards.  At that time, he had open availability on Sunday, Tuesday, and Friday, limited availability on Monday, and was not

---

[5]  Best Buy also issued Rotondo an "Attendance PCR" on July 13, 2015 for the same aforementioned absences which indicated that "[a]fter three attendance violations within 6 months: Corrective action generally applied in the following order: Written Warning; Final Warning; Involuntarily Termination."

[6]  Prior to this time, plaintiff did work Saturdays.  He testified that through at least July 2015, he worked Saturdays.  Specifically, he worked every weekend, which meant either a Saturday or a Sunday shift.

available on Wednesday, Thursday, or Saturday. GM Kolbaum asserts that he spoke with plaintiff about his availability and his failure to meet the Availability Standards. GM Kolbaum instructed Rotondo to change his availability to comply with the standards.

According to GM Kolbaum, other Best Buy managers and employees had conversations with plaintiff, wherein they instructed him to change his availability to comply with the standards. Of particular note, AM Hayes spoke with Rotondo on October 27, 2015 and November 2, 2015 with regard to his failure to comply with the store's Availability Standards. AM Hayes memorialized these conversations with Rotondo in an e-mail correspondence dated November 2, 2015 which advised that AM Hayes "opened a case with HR" regarding the aforementioned issue.

Also on November 2, 2015, Best Buy issued Rotondo a PCR after he failed to appear for a shift scheduled for October 31, 2015. The PCR states that Rotondo "says this shift was scheduled outside of his availability so therefore is invalid, however, Michael's current availability does not meet the company minimum requirements for employment which Michael has been told and has failed to adjust to meet these requirements." Plaintiff disputed the PCR, advising AM Hayes that he notified "Mariah" one week prior that he would not be showing up for that shift. He continues to now claim that Best Buy agreed to his unavailability on all Saturdays.

At no time following the November 2, 2015 email or PCR did plaintiff request an accommodation from the Availability Standards.

Defendant's Attendance/Punctuality Policy states that in the case of a "no call/no show" (where the employee fails to report for his scheduled shift and/or fails to notify the manager on duty within two hours following the start of the shift, without any other

attendance or tardiness infractions), the first no call/no show will result in a "[f]inal warning" which expires twelve months following the date of the final warning. In the case of a no call/no show with other attendance/tardiness infractions or a second no call/no show, the employee can be "involuntarily terminated."

In December 2015, a supervisor told plaintiff that he had to amend his work availability to include Saturdays and if he did not, he would be terminated. Rotondo did not amend his work availability to include Saturdays.

The parties dispute when Rotondo's employment with Best Buy ended. Plaintiff contends he was terminated on December 4, 2015. According to Best Buy, Rotondo did not report for scheduled shifts on December 20, 21, and 22, 2015 nor did he show for a scheduled shift on January 5, 2016. Plaintiff claims he had already been terminated as of those dates. Defendant contends it designated him as voluntarily terminated on March 7, 2016 after he failed to report for scheduled shifts.

## III. **LEGAL STANDARD**

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Anderson, 477 U.S. at 250 n.4. The failure to meet this burden warrants denial of the motion. Id. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553. Accordingly, summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation, 311 F.3d 534, 543 (2d Cir. 2002) (internal quotations omitted). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993).

Cross-motions for summary judgment do not alter the basic standard, but simply require the court to determine whether either of the parties deserve judgment as a matter of law on facts that are not in dispute.

Finally, it is well established that courts must give "special solicitude" to pro se litigants in connection with motions for summary judgment.  Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010).  Thus, a pro se party's papers opposing summary judgment are to be read liberally and interpreted to "raise the strongest arguments that they suggest."  See, e.g., Clinton v. Oppenheimer & Co., 824 F. Supp. 2d 476, 481 (S.D.N.Y. 2011).  This special solicitude is not unlimited, however, and does not "relieve" a plaintiff of his "duty to meet the requirements necessary to defeat a motion for summary judgment."  Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotations omitted).  Nor is the "duty to liberally construe a plaintiff's [opposition] . . . the equivalent of a duty to re-write it."  Geldzahler v. N.Y. Med. Coll., 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34[1] [b], at 12-61 (internal quotations omitted)).  Moreover, "a pro se party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment."  Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014)

## IV.  DISCUSSION

Plaintiff alleges Best Buy discriminated against him based on his sex and relatedly, his parental status, in violation of Title VII.  Putting aside the enumerated causes of action in the Second Amended Complaint, it is clear Rotondo alleges three distinct types of employment discrimination:  (1) unequal terms and conditions of employment, (2) failure to promote; and (3) unlawful termination.

A liberal interpretation of the record establishes that plaintiff challenges the following four employment actions: (1) Best Buy's refusal to honor its alleged agreement that he did not have to work Saturdays and/or its refusal to grant an accommodation to permit him Saturdays off; (2) placement in the "portable audio" or "networking" section of the store; (3) Best Buy's failure to promote him to various full-time positions[7]; and (4) his termination.

Summed up, Rotondo contends he had an agreement with Best Buy that he did not have to work Saturdays due to his visitation schedule with his son. He further asserts that Best Buy treated him differently and unfairly because he was a single father: that management harassed and discriminated against him by refusing to accommodate his visitation schedule with his son, failed to promote him, issued him PCRs, and placed him in less desirable sections of the store, all while single mothers received accommodations in their work schedules and preferential treatment. He contends the aforementioned discrimination ultimately resulted in his unlawful and discriminatory termination.

## A.  Title VII

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).[8] Sex discrimination

---

[7] It is noted that in his Second Amended Complaint, plaintiff did not check the "Failure to promote" box on the Title VII form complaint he used, nor did he allege failure to promote within his delineated causes of action. However, in his attached "Facts" section, he alleged that defendant failed to promote him. Moreover, Rotondo's application for and denial of several positions were the subject of discovery and for these reasons, his failure to promote claim will be analyzed alongside his wrongful termination and unequal terms and conditions claims.

[8] Technically speaking, any claim of parental status discrimination fails because parental status is not actionable under Title VII. However, forms of sex discrimination can surely target both male *and* female
(continued...)

claims under Title VII are analyzed under the three step burden shifting scheme articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973).

Under the McDonnell Douglas framework, plaintiff bears the initial burden of establishing a prima facie case of discrimination. See id. at 802. "The requirements to establish a prima facie case are minimal, and a plaintiff's burden is therefore not onerous." Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 128 (2d Cir. 2012) (internal quotations and citations omitted). The establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the employee.

Once the plaintiff clears this initial hurdle, "[t]he burden then shifts to the defendant to offer 'legitimate and non-discriminatory reasons for the adverse employment action demonstrate in plaintiff's prima facie case.'" Croons v. N.Y. State Office of Mental Health, 18 F. Supp. 3d 193, 202 (N.D.N.Y. 2014) (quoting Risco v. McHugh, 868 F. Supp. 2d 75, 99 (S.D.N.Y. 2012)).

"If the defendant satisfies its burden of production, then the presumption raised by the prima facie case is rebutted and drops from the case." Bucalo, 691 F.3d at 129 (citation and internal quotations omitted). "At the final stage, the plaintiff then has 'the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision'—a burden that 'merges with the ultimate burden of persuading the court that [ ]he has been the victim of intentional discrimination.'" Id. (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

---

[8](...continued)
parents. Because parental status is not a protected class under Title VII per se, any evidence presented of disparate treatment on the basis of plaintiff's parental status will be considered in the analysis of his sex discrimination claim. See, e.g., Rodriguez-Coss v. Sessions, No. 3:16-CV-00633-VLB, 2018 WL 3213290, at *7 (D. Conn. June 29, 2018), aff'd 2019 WL 2611059 (2d Cir. June 26, 2019) (summary order).

"[I]n order to raise an issue of fact that is sufficiently material to defeat a motion for summary judgment, the plaintiff must produce more than simply some evidence; it must be enough evidence to support a rational finding that the defendant's explanation for the adverse action is actually a pretext to disguise discrimination." Croons, 18 F. Supp. 3d at 203 (internal quotations omitted).  In making this determination, a court may examine "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." Bader v. Special Metals Corp., 985 F. Supp. 2d 291, 305 (N.D.N.Y. 2013) (Kahn, J.).

## B. **Plaintiff's Prima Facie Case**[9]

To establish a prima facie case of employment discrimination under Title VII, plaintiff must demonstrate that:  (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. Ruiz v. Cnty. of Rockland, 609 F.3d 486, 491 (2d Cir. 2010).

Best Buy argues that Rotondo cannot present a prima facie case because he was not a member of a protected class, he was not qualified, he did not suffer any adverse employment actions, and he has failed to present sufficient facts to raise an inference of discrimination.

---

[9]  Whether Rotondo has established a prima facie case of discrimination truly need not be decided because his claim fails at the third stage of the McDonnell Douglas inquiry regardless.  "Second Circuit case law makes clear that a court may simply assume that a plaintiff has established a prima facie case and skip to the final step in the McDonnell Douglas analysis, as long as the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action." Howard v. MTA Metro–North Commuter R.R., 866 F. Supp. 2d 196, 205 (S.D.N.Y. 2011) (collecting cases).

### 1. **Protected class**

The parties dispute whether Rotondo, at the time a thirty year old Caucasian male, was a member of protected class. Best Buy argues that Rotondo's sex discrimination claims must fail because he is not a member of a protected class; that he has "presented no evidence whatsoever supporting his claim that Best Buy is an unusual employer who discriminates against the majority." Def.'s Mem. of Law in Supp., Dkt. No. 65–22, 6 (internal quotations omitted).

Defendant's position would impermissibly raise the bar for pleading a cause of action. It relies on the antecedent assumption that the law is *ordinarily* meant to protect only minorities, but that is not what Title VII is meant to do. There is no indication that the Supreme Court or the Court of Appeals for the Second Circuit desire to raise the bar for such plaintiffs. To the contrary, the Supreme Court has on several occasions "indicated that Title VII does not distinguish between traditional and non-traditional plaintiffs." See Tappe v. All. Capital Mgmt. L.P., 177 F. Supp. 2d 176, 181 (S.D.N.Y. 2001) (collecting cases). The high court "has also steadfastly held male plaintiffs to the same standard as female plaintiffs—no more or less." Id. at 182 (discussing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998)). In Oncale, the Supreme Court specifically noted that "Title VII's prohibition of discrimination 'because of . . . sex' protects men as well as women." 523 U.S. at 78. As a male, plaintiff belongs to the protected class of men and, therefore, has satisfied the first requirement.

### 2. **Qualified**

Best Buy next contends that Rotondo cannot satisfy the second prong of a prima facie case because he was not qualified. Defendant both argues he was not qualified for the

position he held (part-time Wireless Sales Consultant), nor qualified for the full-time positions for which he applied and was not selected.

With respect to the position plaintiff was working in until his employment ended, Best Buy points to his inability to comply with its attendance and availability policies, his negative performance reviews, and his below average productivity to argue he was not qualified to remain in his position. Though Best Buy makes compelling arguments, such assertions are better saved for discussion of its proffered legitimate, nondiscriminatory reasons for its employment actions.

Plaintiff's burden at the prima facie stage is de minimis. His allegations that he was qualified to hold his position, was a "good employee who did everything to the best of [his] ability," that he previously worked for Best Buy and was hired again for the instant position, and the fact that he denies the basis for the negative performance reviews related to his job performance can satisfy the relatively minimal burden required to establish this second element. See Jackson v. Battaglia, 63 F. Supp. 3d 214, 223 (N.D.N.Y. 2014) (citing Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001) ("[A]ll that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer.")).[10]

---

[10] "The qualification prong must not . . . be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove, in his prima facie case, the employer's proffer of a legitimate, non-discriminatory basis for its decision." Slattery, 248 F.3d at 92. "[T]he qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that he possesses the basic skills necessary for performance of the job. As a result, especially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." Id. (internal quotations and citations omitted)

With respect to the full-time positions for which Rotondo applied and was not selected, Best Buy's brief addresses those claims in refuting that plaintiff has raised an inference of discrimination.  Defendant contends plaintiff was not qualified for the full-time positions due to his "lack of experience, education or job specific knowledge or skills."  Rotondo alleges in conclusory terms that he was qualified for the various full-time positions, though he includes no specifics whatsoever as to the job requirements for each position.  Cf. Wheeler v. Bank of New York Mellon, No. 616CV1176, 2018 WL 3730862, at *5 (N.D.N.Y. Aug. 6, 2018) (Kahn, S.J.) (holding plaintiff plausibly alleged another employee had less experience than her by describing specific requirements for position, how plaintiff satisfied such requirements, and how other individual did not satisfy such requirements).

Rotondo testified that a Best Buy employee named "Josh," who though it is unclear, was presumably hired for a full-time position over plaintiff.  Which of the positions Rotondo is referring to out of the five that he applied for and did not receive is anyone's guess.  He alleges that he was the more qualified candidate because he had lengthy retail experience including within Best Buy, while Josh had no retail experience.  He further testified that he has a high school diploma, and though he does not have any official training, he has experience computing on open-source software (specifically Linux and Unix).  By contrast, he testified that Josh had only experience creating "apps," which in Rotondo's view was not a relevant qualification.

Plaintiff also alleges generally that other people were promoted and he was not. When pressed for details during his deposition, he mentioned a "Kia" and "Romaeshia" in addition to "Josh," but provided no details.  Rotondo has not described similarly situated people who got the jobs for which he applied.  Nor has he provided any evidence, beyond

unsupported allegations, that the candidates that were chosen for promotions were less qualified than him.

Rotondo has not met his minimal burden to show that he was qualified for the various full-time positions for which he applied, and thus there is no need to further analyze his failure to promote claim.  Even if he could show he was qualified, his sparse allegations fail to provide minimal support for his proposition that Best Buy was motivated by discriminatory intent in filling these positions.  See, e.g., Wheeler, 2018 WL 3730862, at *7 (dismissing failure to promote claims where plaintiff merely stated the promoted individuals possessed less relevant work experience compared to her but failed to provide any detail regarding their comparative qualifications).

Accordingly, defendant is entitled to summary judgment on Rotondo's failure to promote claim due to his inability to establish even a prima facie case.

### 3.  Adverse employment actions

Defendant contends that plaintiff cannot show he suffered any adverse employment actions.  An adverse employment action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  "To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 639–40 (2d Cir. 2000) (internal quotations omitted).

Rotondo identifies three remaining employment actions taken by defendant that he contends were adverse and the result of unlawful sex discrimination:  Best Buy's failure to

honor its alleged agreement regarding having Saturdays off and/or the store's failure to accommodate his visitation schedule; plaintiff's placement in the portable audio section of the store; and Best Buy's decision to terminate him.

Taking each in turn, an employer's change to an employee's existing work schedule may constitute an adverse employment action when it disrupted the employee's existing or anticipated child care routine. See Gibson v. New York State Office of Mental Health, 372 F. Supp. 3d 23, 31–32 (N.D.N.Y. 2019) (collecting cases). Though Best Buy disputes such an agreement, Rotondo has testified that he had an existing agreement permitting him Saturdays off. Even if such agreement did exist, informally or formally, plaintiff's Court Order did not even provide for visitation on Saturdays; instead he and the child's mother verbally modified the Court Order, allowing for him to have parenting time on Saturdays.

He has not established that a change from permitting him Saturdays off to requiring he work Saturdays *severely* disrupted his child care routine and/or his ability to spend time with his son. In fact, the Court Order provided parenting time each and every Tuesday, from 1:00 p.m. until 9:00 p.m.; each and every Friday, from 1:00 p.m. until 9:00 p.m.; each and every Sunday, from 10:00 a.m. until 6:00 p.m.; and one overnight per week, from 6:00 p.m. until 12:00 p.m. the following day, on the day of the week as mutually agreed by the parties. Plaintiff concedes that "retail is a lot of times a weekend job. So if I had to switch around my visitation in order to work there, I would have the ability to do so. I would've had to make my visitation only weekdays if it meant getting a job there."

Moreover, to the extent that plaintiff's existing schedule required him to work Saturdays in accordance with Best Buy's policy, a *failure* to change an existing work schedule to accommodate childcare needs does not constitute an adverse action. See

Gibson, 372 F. Supp. 3d at 31–32 (discussing cases holding that a refusal to grant a shift change is generally not an adverse employment action). Rotondo does not allege any facts plausibly suggesting that defendant's refusal to grant him a shift change objectively caused a negative effect related to child care that would rise to the level of an adverse effect on the terms, privileges, or conditions of his employment.

Turning next to plaintiff's claim that he was unlawfully placed in the "portable audio" or "networking" section of the store, he has failed to put forth sufficient facts showing that such an assignment resulted in a material detriment to his working conditions and not just a mere inconvenience. He testified that he preferred to work in the mobile phone section of the store, but instead was regularly placed in the portable audio or networking areas.

He asserts that mobile phones were preferred products to sell over portable audio products and consumer networking products because mobile phones were "easier for you to hit your goals for revenue." Rotondo contends that revenue "goals were heavily -- it was important to management that these goals were hit and that was made clear to us through a lot of different things. They would talk to you about your revenue and why it was or was not meeting goals. And that would happen on a regular basis." According to GM Kolbaum, there is no benefit or disadvantage to an employee being placed in either the portable audio section of the store or the networking section of the store.

Plaintiff has not included sufficient detail for the Court to determine whether placement in an area other than mobile phones significantly altered the terms of his employment. He does not allege facts explaining how placement in this section materially changed the terms and conditions of his employment. There is no allegation that such placement altered his workload. To the extent he contends it hindered his ability to hit revenue goals and thus

adequately perform his job, Rotondo has not alleged any facts showing that as a result of placement in the portable audio or networking sections, he suffered any material change in the terms or conditions of his employment such as loss of wages, benefits, responsibilities or anything else.

Even if plaintiff had put forth sufficient evidence to satisfy his minimal burden at this step as to these allegedly adverse actions, he has not alleged facts that would raise an inference of discrimination. He states in conclusory fashion that other people who were not single parents were allowed to work in the department that sold mobile phones. However, he testified that an employee by the name of Samantha Precourt, a single female parent, worked in the mobile phones section. Moreover, GM Kolbaum testified that the decision to place an employee in a certain department of the store is based upon the staffing and business needs of the store at that time, and plaintiff has offered no evidence to ultimately refute this assertion.

Finally, turning to Rotondo's termination, Best Buy actually argues that he did not suffer an adverse employment action in that he was not terminated. Instead, it argues that pursuant to company policy, he was deemed "voluntarily terminated" after he failed to report for scheduled shifts. It cannot seriously be disputed that plaintiff suffered an adverse employment action when he was terminated from his job at Best Buy. Defendant is free to rely on its policies, and plaintiff's failure to comply with those policies, to justify his termination. Nevertheless, Rotondo suffered an adverse employment action when he was terminated from his position at Best Buy.

### 4. **Inference**

With only plaintiff's unlawful termination claim remaining, attention must now be turned to the final prong of a prima facie case requiring "that the discharge occurred under circumstances giving rise to an inference of discrimination." Brown v. Daikin Am. Inc., 756 F.3d 219, 229 (2d Cir. 2014) (internal quotations omitted). "A plaintiff may demonstrate circumstances giving rise to an inference of discrimination by alleging that he was treated less favorably than similarly situated employees of other . . . [protected groups]." Id. An inference of discrimination can also be established by a showing that plaintiff's position was ultimately filled by an individual who is not a member of plaintiff's protected class. Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001).

To support his contention that the circumstances of his termination give rise to an inference of sex discrimination, Rotondo alleges that he was not treated as well as his female coworkers. However, he has not described similarly situated people that were treated differently from him and has produced no evidence in admissible form to support such a claim. There is no suggestion based upon the record that plaintiff was treated differently in any manner to any of his coworkers, or that any of these coworkers had availability which, like Rotondo, did not comply with the Availability Standards.

With regard to his claim that an employee named Mary was treated more favorably than he was, Rotondo alleges that "[s]he didn't complain about anything. She seemed chipper on the job. There was no grievances from her whatsoever. And I had heard grievances from her, that she was very outspoken about grievances." Furthermore, "[t]here was never any complaint from her about being able to see her child or be in her child's life or being scheduled just to harass her with her parenting time or failure to be promoted or being

scheduled — or given different or separate duties than other people in the same position." However, Rotondo testified that Mary held a different position (Customer Service Department and Warehouse Department) than he did and he did not know the job or attendance requirements for Mary's positions.

With regard to Rotondo's claim that an employee named Samantha Precourt was treated more favorably than he was, here too he has failed to demonstrate she was similarly situated.

Despite satisfying the adverse employment action prong, Rotondo has not established that the circumstances of his termination give rise to an inference of discrimination. Because plaintiff has not established a prima facie case, it is unnecessary to undertake the burden shifting analysis. Nevertheless, if Rotondo *had* made out a prima facie case, Best Buy has provided legitimate reasons for its decision to terminate his employment.

### B. Legitimate nondiscriminatory reason

Assuming that plaintiff could make out a prima facie case on his unlawful termination claim, Best Buy would still be entitled to summary judgment because it has articulated legitimate, nondiscriminatory reasons for his termination, and there is no competent evidence that these reasons were pretextual.

The burden at this stage is also "light," and "[t]he employer need not persuade the court that it was motivated by the reason it provides; rather it must simply articulate an explanation that, if true, would connote lawful behavior." Croons, 18 F. Supp. 3d at 202–03. In other words, "[t]his burden is one of production, not persuasion; it can involve no credibility assessment." Id. (internal quotations omitted).

Best Buy states its nondiscriminatory reason for its decision to terminate plaintiff is his well-documented history of failing to comply with Best Buy policies, procedures, and expectations. The record contains voluminous evidence to support Best Buy's contention that Rotondo had a history of failing to meet company standards and expectations, comply with applicable policies, and cooperate as a Best Buy team member.

Specifically, plaintiff was issued PCRs for being late for scheduled shifts on February 14, March 15 and May 4, 2015. Plaintiff was also issued a PCR for calling in for his shift on July 11, 2015 and arrived two hours and forty three minutes late for his scheduled shift on July 12, 2015. This PCR states that "Michael is to adhere to the Attendance / Punctuality [Policy] in its entirety for the next 6 months. Failure to comply with the Attendance / Punctuality Policy will result in further disciplinary action up to and including termination."

A PCR was issued on November 2, 2015 due to plaintiff's failure to appear for a shift scheduled for October 31, 2015. The PCR states "Michael says this shift was scheduled outside of his availability so therefore is invalid, however, Michael's current availability does not meet the company minimum requirements for employment which Michael has been told and has failed to adjust to meet these requirements." Further, Rotondo did not report for scheduled shifts on December 20, 21, and 22, 2015 nor did he show for a scheduled shift on January 5, 2016.

Moreover, as repeated throughout this discussion, plaintiff's availability did not comply with Best Buy's Availability Standards, as he was not available to work at least one Saturday shift and one Sunday shift. Nor did he comply with requests from management to change his availability to comply with the Availability Standards.

As set forth above, plaintiff's pattern of misconduct constitute terminable offenses under Best Buy's availability and attendance policies. The application of neutral company policies is "by definition" a legitimate, nondiscriminatory reason for a particular action. See Raytheon Co. v. Hernandez, 540 U.S. 44, 51 (2003); Russell v. Aid to Developmentally Disabled, Inc., 753 F. App'x 9, 14 (2d Cir. 2018) (summary order) ("Russell was terminated in part for violating ADD's attendance policy, outlined in its employee handbook, which set forth rules regarding lateness and absenteeism. It was undisputed that Russell was absent 44 times and late 85 times between February 2009 and January 2010. Applying ADD'S neutral attendance policy is a neutral reason for the complained of action.") (internal quotations omitted).

Accordingly, Best Buy has carried its burden of identifying a legitimate, nondiscriminatory reason for Rotondo's termination, which, taken as true, would permit the conclusion that his termination was nondiscriminatory.

## C. Pretext

If defendant carries its burden to put forth a legitimate, nondiscriminatory reason, plaintiff may no longer rely on the presumption raised by the prima facie case, but rather must put forward evidence that would allow a reasonable jury to conclude that the employer's action was in fact the result of the discrimination.

A plaintiff may make a pretext showing "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Campbell v. Cellco P'ship, 860 F. Supp. 2d 284, 302 (S.D.N.Y. 2012); see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502,

509 (1993) ("[R]ejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination.").

"A discrimination claimant may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Bombero v. Warner–Lambert Co., 142 F. Supp. 2d 196, 203 n.7 (D. Conn. 2000).

Plaintiff alleges that although he was told he was terminated because of his attendance issues and failure to comply with the Availability Standards, this explanation was pretextual, and that in fact, the refusal to accommodate his schedule, the PCRs, and the failure to promote him were in fact all undertaken to harass and discriminate against him.

Rotondo has offered nothing more than self serving circular assertions. These baseless and unsupported allegations do not come close to offering evidence of pretext following Best Buy's explanation for his termination. See, e.g., Russell, 753 F. App'x at 14 ("Applying ADD'S neutral attendance policy is a neutral reason for the complained of action . . . Russell pointed to no evidence that the enforcement of the attendance policy was a pretext for . . . discrimination."). Rotondo's comparator evidence fails to establish pretext because there is insufficient evidence that his female comparators were similarly situated to him. He has provided no evidence that females were not written up or terminated for the same conduct.

As explained, Rotondo failed to offer any evidence that would give rise to an inference of discrimination, let alone that defendant's legitimate, nondiscriminatory reason was

pretextual. Plaintiff has offered no evidence to suggest that the enforcement of the policies at issue was anything other than neutral. Thus, even *if* Rotondo were to make it to this stage of the <u>McDonnell Douglas</u> framework, his claim would fail. <u>See</u> <u>Raytheon</u>, 540 U.S. at 51–52 (holding that plaintiff could not survive summary judgment absent evidence that company's policy against rehiring employees that had violated company rules was a pretext for discrimination); <u>Joseph v. Owens & Minor Distrib., Inc.</u>, 5 F. Supp. 3d 295, 313-14 (E.D.N.Y. 2014) (finding plaintiff failed to establish prima facie case of discrimination where defendant articulated nondiscriminatory reason for termination, including complaints from customers, but plaintiff did not provide evidence of pretext).

Accordingly, defendant's motion for summary judgment as to plaintiff's sex discrimination claims will be granted.

## V.  <u>REMAINING ISSUES</u>

Rotondo has devoted most of his submissions to complaints about defendant's allegedly inadequate participation in discovery, including certain interrogatory responses, request for admission responses, production of documents, and scheduling of non-party depositions. Both parties have provided more details than necessary regarding the timeline of discovery, and who said what, where, and when.

In fact, twenty three of the thirty five paragraphs in plaintiff's "Affidavit in Support of Summary Judgment" (also titled as his "Statement of Material Facts") in support of his cross-motion for summary judgment, criticize Best Buy's conduct during discovery. These allegations however amount to little more than an expression of plaintiff's frustration and regret that he did not depose certain non-party, former Best Buy employees within the time periods proscribed by this Court and the Federal Rules of Civil Procedure.

In any event, Rotondo's complaints are too little and too late. As other litigants recently before this Court on summary judgment were reminded, "this federal judicial district, just like every other, has well-worn, standard procedures for raising, resolving, and if necessary litigating discovery disputes before the assigned U.S. Magistrate Judge." Carter v. Broome Cty., No. 9:16-CV-422, — F. Supp. 3d —, 2019 WL 3938088, at *4 (N.D.N.Y. Aug. 21, 2019) (citing Local Rule 7.1(d)). Moreover, "this federal judicial district, just like every other, also adheres to the nationwide statutory provisions governing how a civil litigant may appeal an adverse discovery ruling to the assigned U.S. District Judge." Id. (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)). But as in Carter, discovery is already closed in this case. In other words, a motion for summary judgment is not the place to raise this kind of complaint.

Rotondo is reminded that he requested and was granted an extension of the discovery deadline, extending it from May 2, 2018 to June 4, 2018. See Text Minute Entry, April 13, 2018; Dkt. No. 58. Further, plaintiff was well aware of this District's standard procedures governing discovery disputes and in fact exercised his option to bring such a dispute to the Court's attention on March 1, 2018 when he moved to compel discovery. Dkt. No. 52. There is no indication he appealed the denial of that motion, Dkt. No. 58, to the undersigned.

Moreover, Rotondo was provided with both a pro se handbook and an order describing pretrial available discovery devices. See, e.g., Dkt Nos. 3, 64. United States Magistrate Judge David E. Peebles even offered plaintiff informal guidance on his discovery requests and advised multiple times how and when he could file a motion to compel. See, e.g., Text Minute Entry, February 8, 2018; Dkt. No. 53; Text Minute Entry, April 13, 2018; Text Minute Entry, May 10, 2018.

Magistrate Judge Peebles specifically reminded Rotondo on May 10, 2018, as the discovery deadline was looming, that any discovery related motion must be filed within fourteen days of the close of discovery. <u>See</u> Text Minute Entry, May 10, 2018. Finally, Magistrate Judge Peebles' May 17, 2018 Text Order, just two and a half weeks before the close of discovery, alluded to plaintiff's requirement to show good cause if in fact he sought to extend the existing June 4, 2018 discovery deadline.

Instead, the June 4, 2018 discovery deadline came and went without a further peep from plaintiff. Not only is this not the time or place to litigate discovery disputes, but Rotondo's allegations are without merit.

Turning to the remainder of plaintiff's cross-motion for summary judgment, his allegation that defendant violated New York Codes Rules and Regulations section 142–2.3 titled "Call-in pay" is misplaced. Not only is this claim improperly raised for the first time in the context of Rotondo's motion for summary judgment, but he entirely fails to provide any support for this accusation. Relatedly, his conclusory statements that he is entitled to front and back pay are rejected as baseless.

For these reasons, in addition to those described above demonstrating defendant's entitlement to judgment as a matter of law, plaintiff's cross-motion for summary judgment will be denied in its entirety.

## VI. <u>CONCLUSION</u>

On his failure to promote claim, plaintiff cannot sustain even the de minimis requirements of a prima facie case. He has failed to put forth evidence demonstrating he was qualified for the positions he applied for and accordingly, his failure to promote claim is meritless.

Likewise, Rotondo has failed to make out a prima facie case as to his unequal terms and conditions of employment claim because he cannot sustain his burden to show that Best Buy's refusal to permit him Saturdays off to spend time with his son or his placement in the portable audio or networking zones rather than the mobile phones section constitute adverse employment actions.

Turning finally to plaintiff's unlawful termination claim, though minimally establishing his qualifications for the job he already possessed and a clear adverse employment action in the form of termination, Rotondo has failed to raise an inference of discrimination to satisfy even a prima facie case. Even if he could, Best Buy has provided legitimate nondiscriminatory reasons for his termination, and Rotondo has offered nothing to demonstrate the proffered reasons were pretextual.

For these reasons, no reasonable jury could conclude that Best Buy discriminated against Rotondo on the basis of his sex, and defendant is entitled to summary judgment dismissing the Second Amended Complaint in its entirety.

Both for this reason and the complete lack of support underlying his own motion, Rotondo's cross-motion for summary judgment in his favor will be denied. All of the remaining arguments have been considered and are without merit.

Therefore, it is

ORDERED that

1. Defendant Best Buy's motion for summary judgment is GRANTED;

2. Plaintiff Michael Joseph Rotondo's cross-motion for summary judgment is DENIED; and

3. The Second Amended Complaint is DISMISSED in its entirety.

The Clerk is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: October 1, 2019
       Utica, New York.